## Estate of Philip Kuhlman, deceased. Appeal of William Rehfuss.

| 178 | 43 |
| s180 | 109 |
| 178 | 43 |
| 200 | 204 |
| 178 | 43 |
| f212 | ¹431 |

*Decedent's estate—Claim against—Bond—Executors and administrators.*

The mere fact that the executor of the maker of a bond which had matured several years before the death of the testator has unexplained possession of the bond which is payable to the executor, will not prevent the executor from recovering on the bond.

An executor at the time of his testator's death had unexplained possession of a bond made by testator to the executor, which had matured several years prior to testator's death. The evidence showed that the bond represented a loan, and that testator's financial condition and his own declarations were opposed to the theory that the bond had been paid, and there was nothing on the bond to show that it had been paid. *Held*, that there was sufficient evidence to show a hostile title in the executor against the testator's estate.

Argued May 18, 1896. Appeal, No. 73, July T., 1895, by William Rehfuss, from decree of O. C. Lancaster Co., dismissing exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to report of auditor, W. W. FRANKLIN, ESQ.

Philip Kuhlman, the decedent, an aged citizen of Lancaster, died December 12, 1890.   He was a widower, and he left as his heirs and legatees three children, Michael, Bernhard (also called Benjamin) and Louisa, intermarred with William Rehfuss, the accountant, who was appointed his executor.

The material portion of the auditor's report is as follows :

The item on the credit side of the account, to wit: April 7, 1893, William Rehfuss, for notes and interest, $1,674.43 is excepted to.   This claim consists of four items, namely :

1. A judgment bond from Philip Kuhlman to William Rehfuss, dated June 9, 1883, payable in one year from date, conditioned for the payment of $90.00, with interest at the rate of six per cent from date.

2. A note as follows :

" $150.00.                    LANCASTER, Pa., January 16, 1884.

" Three months after date I promise to pay to the order of William Rehfuss, One Hundred and Fifty Dollars, without defalcation, value received, with interest.

" And further I do hereby authorize and empower any Attorney of any Court of Record of Pennsylvania, or elsewhere, to appear for and enter Judgment against me for the above sum, with or without declaration, with costs of suit, release of errors, without stay of execution, and with five per cent. added for collecting fees ; and I also waive the right of inquisition on any real estate that may be levied upon to collect this note, and do hereby voluntarily condemn the same, and I agree that said estate may be sold on a fi. fa., and I hereby waive and release all relief from any and all appraisement, stay or exemption laws of this or any other State, now in force, or hereafter to be passed.

" Witness present: {                PHILIPP KUHLMANN."

" $756.00.                    LANCASTER, Pa., April 1, 1885.

" One year after date I promise to pay to William Rehfuss the sum of $756 (seven hundred and fifty-six dollars), with lawful interest, without defalcation, for value received.

"PHILIPP KUHLMANN."

4. A running account from April 1, 1883, to July 15, 1888, for money loaned, with interest, amounting in all to $179.55.

These payments were objected to by the counsel for the heirs on the ground that they were barred by the statute of limitations, and that the claimant had failed, being the executor of the estate, to show a hostile title, and that the judgment bond had never been entered, and could only be entered at this time (that is, after it was ten years old) by special leave of court, and further, that No. 2 (marked W. W. F. No. 5) was only a common note, as it was not under seal.

Counsel for Mr. Rehfuss, in answer to this, contend that an executor is not bound to plead the statute of limitations against a just claim, and have cited no authorities on the question of hostile title. On the question of these claims being barred by the statute of limitations, York's Appeal, 110 Pa. 69, etc., and a number of subsequent cases to the same point, were cited by the counsel for two of the heirs. There was no evidence offered on these notes except to prove the genuineness of the signature of the decedent, and Rehfuss did not call any witness to show how they came into his possession, whether as executor or by hostile title. While the auditor accepts the proposition that an executor is not bound to plead the statute of limitations against a just claim as good law, the question then arises whether the executor being the claimant himself can take advantage of that principle, and not be forced to give the heirs some legal notice of his adverse claim before the six years shall have elapsed. The auditor thinks the executor was compelled to give due legal notice to the heirs, where he was the claimant himself, and give them an opportunity to be heard.

As to the principle that an executor must clearly show hostile title to an overdue note or judgment (that has never been entered of record), the auditor is of the opinion that the point is well taken and clearly established in the syllabus to Hoffer's Appeal, 156 Pa. page 473, etc., namely: "An executor who is the payee of the note of his decedent which is overdue at the time of decedent's death, must show clearly that he held the note by a title hostile to that of decedent." And in the opinion of the same case appears the following language, to wit: "The executor is also the payee, and therefore as the possession

might either be in his own right or merely as executor he was bound to show clearly he held the note by a hostile title."

The judgment bond and two notes were long overdue, and as Mr. Rehfuss failed to offer any evidence to show that he held them by a hostile title to the decedent, the auditor is of the opinion that the decision in Hoffer's Appeal is on all fours with the present claim, and that two cases more precisely alike in principle could hardly be found. The auditor therefore rules that the judgment bond marked W. W. F. No. 4; note marked W. W. F. No. 5, and note marked W. W. F. No. 6, shall be stricken from the credit side of the account, and the executor is surcharged with the sum of $1,494.88.

In regard to the running account for money loaned by the executor to the decedent, amounting with the interest to $179.55, some evidence was offered to show that on the dates mentioned in the statement marked W. W. F. No. 7, the decedent had paid small notes and discounts on others at the banking house of D. P. Locher & Sons, and had declared to Mr. Chas. A. Locher he had borrowed the amounts from William Rehfuss, and up until nearly the time of his death he acknowledged he had borrowed these small sums from the executor to others. There was no evidence offered that the executor had been paid this account by decedent.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were (1) in overruling the accountant's second exception to the auditor's report, to wit: The auditor erred in surcharging the accountant with the sum of $1,494.88, and in disallowing his claim for money due on judgment bond marked "W. W. F. No. 4;" on note marked "W. W. F. No. 5;" and note marked "W. W. F. No. 6;" (2) in finding as follows: the auditor, we believe, was correct, also, in his findings and conclusions with reference to the bond and notes referred to in the accountant's second exceptions. The presumption of law as to the character of the possession of the notes, in our opinion, was not overcome by the testimony of witnesses produced on the part of the accountant. Under the law, he was bound to show clearly that he held these evidences of indebtedness against the decedent as an individual, and not by virtue of his executorship.

*C. Reese Eaby* and *D. McMullen,* for appellant.—The evidence of the creation of the indebtedness is clear, circumstantial, distinct—by entirely disinterested witnesses—there is no allegation to the contrary; and all the evidence goes to show that from the time of the giving of the notes to the death of the testator he was in no condition financially to repay the loans. And it is proper to state here that in the application for an order to sell the real estate made to the court below, this indebtedness is enumerated with the other indebtedness of the testator: Hoffer's Est., 156 Pa. 473.

*W. H. Roland,* for appellee.—The statute of limitations may be pleaded in the orphans' court, to a claim against the decedent's estate. It is pleadable whenever the relation of debtor and creditor exists: York's App., 110 Pa. 69; Campbell v. Marple, 105 Pa. 304: Ayer's Est., 1 Pear. 413; Shand's Est., 1 Pa. C. C. 600; Keyser's App., 23 W. N. C. 201.

Death does not toll the statute. Suit must be brought in his lifetime, or against his representatives within six years of the maturity of the debt, or it is barred: Wallace's Est., 43 L. I. 282; Amole's App., 115 Pa. 356; Lang's Est., 33 P. L. J. 9; Chapman's App., 122 Pa. 331; Miskey v. Miskey, 19 W. N. C. 87; Miskey v. Miskey, 20 W. N. C. 470; Williamson's App., 1 Mona. 241; Lewis's Est., 2 Pear. 487; Light's Est., 27 W. N. C. 21.

The appellant, being the executor, was bound to show that he held the obligation of a hostile title. He and his attorney were well aware of this fact. They had possession of Philip Kuhlman's books and papers, and as they failed to produce them it must be presumed that they were against them: McMahon's Est., 132 Pa. 179; McGeary's App., 5 Cent. Rep. 855; Hoffer's Est., 156 Pa. 473.

OPINION BY MR. JUSTICE McCOLLUM, October 5, 1896 :

The question raised by this appeal is whether the learned court below erred in refusing to allow the appellant a credit in his account for the amounts represented by the bond and notes he held against the estate. The claims based on the notes were barred by the statute of limitations, and the claim founded upon the bond was not. The former were simple contracts for the

payment of money, and the latter was a specialty. There was no evidence of a payment, acknowledgment or promise which tolled the statute as to the notes, and the lapse of time was not sufficient to raise a presumption that the bond was paid. The mere fact that the notes were held by the executors of the estate did not prevent the running of the statute. If therefore the only question raised on the appeal related to the effect upon the claims of the statute of limitations, the claim upon the bond should be allowed and the claims upon the notes should be rejected.

The learned court below thought that as the claimant was the executor of the maker of the bond and notes, and they matured several years before the death of the latter, the unexplained possession of them by the former was not sufficient to enable him to recover upon either of them : McGeary's Appeal, 5 Central Reporter, 855; McMahon's Estate, 132 Pa. 179, and Hoffer's Estate, 156 Pa. 474, are cited to sustain this view. McGeary's Appeal was not decided on the ground of a presumption that the papers on which the claims were based were received and held by the claimant as administrator of the estate, but upon the weight of the testimony in the case. In the opinion on which the decree of the court below was affirmed it was said : " Most of the other papers offered in evidence upon which credits are claimed are debts due by the decedent which antedate his death from three to four years, and a majority of the transactions were of such a nature that the probabilities are they were settled in his lifetime. All of these papers were found in a wallet containing other valuable papers of H. S. McGeary in his safe after his death. But he may have come into possession of all, except the note for $500 dated November 9, 1880, which matured after decedent's death, as his administrator. This possibility weakens the prima facie case made out by their possession." After summarizing the material parts of the testimony the court said : " the weight of the evidence seems to be against the accountant as to the credits claimed for indebtedness due by the decedent to H. S. McGeary, except as to the G. B. Brown note ; and with that exception they are not allowed." In McMahon's Estate it was decided that on the distribution of the effects of the decedent " it was not error to exclude from allowance a note signed by the mark of the testatrix who could not read or write, and the execution of which was not clearly and

satisfactorily established." All that was said in the opinion in regard to the duty of the claimant to prove that he had the note by a "hostile title" was said in the light of circumstances which condemned his claim as fraudulent and on which it was rejected. In Hoffer's estate the claims were allowed upon the evidence of the executor's wife that the notes on which they were based were in her custody immediately after the decedent's death, and that she then handed them to her husband. Not one of the decrees entered in the cases cited rests distinctly upon the ground on which the court below entered the decree in this case. The decree in each of the cited cases was based on the facts found from the testimony.

If it be conceded that the executor in this case, by reason of the time intervening between the maturity of the bond and notes and the death of the maker of them was bound to show a hostile title, there was ample and undisputed evidence to establish it. The proof was clear that the bond and notes were executed by the decedent and represented loans made by him of Rehfuss from time to time, and equally clear that his financial condition from the time of their execution to the time of his death was not such as to render the repayment of them probable. His own declarations in regard to the loans were flatly opposed to the theory that he had paid them, and at least one of these declarations was made within a few months of his death. Besides there was nothing upon the bond or notes to indicate that he had paid them, or that they were in his possession at any time after he executed and delivered them to Rehfuss. It is not usual for a party who has paid his note to retain it without canceling his signature to it or making some entry thereon destructive of his liability created by it. In view of the evidence we think the conclusion that Rehfuss obtained possession of the bond and notes as executor of the estate was unwarranted, and that his claim upon the bond which was not barred by the statute of limitations, should have been allowed. We therefore sustain the second specification of error and so much of the first as relates to the disallowance of the claim upon the bond.

Decree reversed at the costs of the appellee and record remitted, with direction to enter a decree in accordance with this opinion.