---

BACHRACH v. JEWISH FOSTER HOME.

(Circuit Court, E. D. Pennsylvania. March 17, 1911.)

No. 619.

1. ASYLUMS (§ 5*)—INMATES—PROPERTY RIGHTS—NATURE OF RELATION.

In June, 1870, plaintiff, being a ward of defendant Home then nine years of age, was apprenticed to S., and in June, 1871, plaintiff, by the Home, as her next friend, obtained as the proceeds of the compromise of an action against S. for trespass vi et armis the obligations of S. for $2,500; the Home executing a written instrument, acknowledging receipt of the secured obligations, and reciting that the amount thereof was received by the Home, the income to go toward the support of plaintiff for life, and if she should die leaving lawful child or children, or their issue, the principal was to be given at her death to such lawful child or children, or their issue, and if she should die without lawful child or children, or their issue, then the amount should be held by the Home absolutely for its own use. Plaintiff did not consent to the execution of this paper, but remained passive, receiving from the Home semiannually the income on the whole principal, which it collected as the proceeds of the obligations of S. *Held*, that the writing was ex parte, that the Home was plaintiff's agent, and that on plaintiff's becoming of age she was entitled to recover the principal for her sole use.

[Ed. Note.—For other cases, see Asylums, Dec. Dig. § 5.*]

2. EQUITY (§ 71*)—LACHES.

Where there was no basis for an equitable estoppel against plaintiff's right to recover money held for her by defendant Home, she was not barred by laches from maintaining a suit to recover the fund.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 204–211; Dec. Dig. § 71.*]

3. ADVERSE POSSESSION (§ 60*)—ACCRUAL—POSSESSION BECOMING ADVERSE.

Where defendant admitted it held a fund for plaintiff, payable to her lawful child or children, or their issue, at her death, and only in default of such issue was it to belong to defendant, there could be no adverse possession until after plaintiff died without issue.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. LIMITATION OF ACTIONS (§ 157*)—PAYMENTS.
      Limitations did not run against defendant's obligation to pay money
      held for plaintiff while defendant made semiannual payments of interest.
      [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§
      631–636; Dec. Dig. § 157.*]

Action by Emma Bachrach against the Jewish Foster Home. Judgment for plaintiff.

William S. Evans, for plaintiff.
Clinton O. Mayer, for defendant.

J. B. McPHERSON, District Judge. This proceeding is open to criticism in some formal respects; but as the dispute is real, and the parties evidently intend that the decision of the Circuit Court shall be final (Com. v. Callahan, 153 Pa. 625, 25 Atl. 1000), the irregularity will be overlooked. Their agreement may be further condensed into the following statement: The Jewish Foster Home was incorporated in 1855 for the purpose of instructing and caring for orphans or children of indigent Israelites. In 1866 it was empowered to act as guardian for the children placed under its care and management, and to bind them out as apprentices. In June, 1870, the plaintiff (then 9 years old and named Emma Meyers) was under its guardianship, and was apprenticed to Henry Silverman. He did not carry out the conditions of the indenture, and in June, 1874, the plaintiff, by the Home as her next friend, issued a summons in trespass vi et armis against him and another person in one of the Philadelphia courts. The case was soon afterwards compromised for $2,500, and on June 19th the Home executed the following paper:

"We have this day received from Henry Silverman two notes, each dated this day—one for $1,250, at sixty days, to the order of Theodore Wyle and Marcus Heilbron, and by them indorsed; the other for the same amount, to Henry Silverman's own order, and by him indorsed, at four months, and this last note accompanied with certificate and power of transfer for twenty-four shares of Pennsylvania R. R. Company's stock, as collateral security for its payment. Upon payment at maturity, or before, of the said two notes, the said collateral is to be surrendered, and the above suit discontinued of record, and all claims of the Jewish Foster Home Society against defendants will be satisfied, and the indentures between the said Society and Henry Silverman will be canceled. The said amount of two notes, being $2,500, to be received by the said Jewish Foster Home, and the income given towards the support of Emma Meyers, during her life. If she should die, leaving lawful child or children, or their issue, the principal is to be given, at her death, to such lawful child or children, or their issue. If she should die without lawful child or children, or their issue, then the said amount is to be held by the said Foster Home absolutely, for the uses of said Home.
      "Philadelphia, June 19, 1874.
                          "The Jewish Foster Home Society of Philadelphia,
                                            "By Edward H. Wyle,
                                            "I. Binswanger."

On October 20, 1874, the suit was discontinued. Henry Silverman paid the $2,500. The Home invested the money, and has paid the interest semiannually to the plaintiff until the present day. The plaintiff came of age in 1882, and in 1887 (to use the language of the case stated) "a paper in writing was issued by the defendant to plaintiff"—being the paper just quoted. In January, 1910, she "made a de-

mand in writing on defendant to account for or to pay over to her the above-mentioned principal sum of money, but the defendant refused so to do."

Under the terms of the submission the action may stand either as a bill for an account or a suit at law for the money; and I shall regard it —what in substance it is, and the parties have treated it—as a proceeding for a money judgment or decree. It rests on the proposition that the Home has possession of money belonging to the plaintiff which it declines to surrender. There is no doubt that in 1874 the money was the plaintiff's. She was the actor in the suit. The cause of action, whatever it may precisely have been, was a tort of some kind affecting her person, and the money paid in compromise was necessarily her own. This is too plain to need argument. How, then, did the money come to be impressed with a trust that is now averred to cut down her absolute ownership of the fund to a life interest, and to give the Home a contingent interest in remainder? She signed no paper having this object, and there is no direct evidence that she made any verbal agreement. The writing of June 19, 1874, standing alone, does not bind her. It is the ex parte declaration of the Home itself, and can have no effect, unless the inference ought to be drawn that she agreed to it. The ex parte character of the writing is conceded, and it only remains to look for the ground upon which such an inference must rest. No ground exists, unless it be found in the fact that she has allowed the Home to retain possession of the money since 1887. So far as appears, however, this fact does not warrant the inference. The case stated contains no agreement that she ever assented to the terms of the trust. Nothing appears, except that she has simply been silent. If there had been a duty to speak, her silence might be eloquent; but I can see no such duty. The time to speak has not yet come. The Home has not been misled. It has done nothing in reliance on her silence that gives it any equitable claim on her conscience. It is now just what it was in 1887, namely, the custodian of her money—a careful and attentive custodian, no doubt, but certainly not the holder of the fund under any claim of adverse possession, and not yet a claimant under its supposed contingent interest. There is, therefore, no room to apply the doctrine of laches, for this rests upon equitable estoppel; nor the doctrine of adverse possession, for there can be no such possession until the plaintiff dies without issue; nor the statute of limitations— even if this were set up by the Home—for the semiannual payments of interest would be a complete reply.

In short, I can discover no ground upon which the Home can successfully stand. The money was originally hers, she never agreed to impress it with a trust, and the Home has merely been holding it all these years as a faithful agent. It is now called upon to account for and pay over the principal, and in my opinion it has no adequate reply to such a demand.

But no formal account is necessary. Interest is conceded to have been paid regularly, and the only duty that remains is the payment of the principal. It is therefore ordered that judgment be entered in favor of the plaintiff for the sum of $2,500.