ESTATE OF ELEANOR HUGHES BEGGS, MELLON NATIONAL BANK AND TRUST COMPANY, SUCCESSOR BY MERGER AND CONSOLIDATION TO THE UNION TRUST COMPANY OF PITTSBURGH, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17343. Promulgated July 25, 1949.

*Norman D. Keller, Esq.*, for the petitioner.
*George C. Lea, Esq.*, for the respondent.

**134**

## OPINION.

BLACK, *Judge*: The question for us to decide is whether the $10,000 which decedent loaned to her husband in 1933, as described in our findings of fact, is includible in decedent's gross estate under section 811 (a) and/or (c) of the Internal Revenue Code, as respondent has determined. If it is includible under either 811 (a) or 811 (c), respondent, of course, should prevail.

We shall first consider whether the $10,000 is includible in decedent's gross estate under section 811 (a) of the code, which is printed in the margin.[1]

---

[1] SEC. 811. GROSS ESTATE.
   The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
   (a) DECEDENT'S INTERESTS.—To the extent of the interest therein of the decedent at the time of his death.

Respondent argues that the $10,000 claim against the estate of Joseph P. Beggs was still in existence at the time of decedent's death and, hence, as an asset of decedent, was includible in her gross estate under 811 (a). In our findings of fact we found that the $10,000 was never repaid, but petitioner contends that the Orphans' Court of Allegheny County, in the proceedings wherein the account of the estate of Joseph P. Beggs, deceased, came on for audit, declared that the $10,000 debt was barred by the statute of limitations. If petitioner is correct in this contention, we would be bound by the decision of that state court. This would mean that decedent, at the time of her death, had no legally enforceable claim against the estate of Joseph P. Beggs and, hence, there could not be included in her estate the $10,000 under section 811 (a). Respondent argues, however, that, since the decree and the opinion of the orphans' court are bare of any mention of the $10,000 being barred by the statute of limitations, although the statute had been pleaded by the daughter, the court did not decide the question and it is now for us to determine whether there was a $10,000 claim existing at the time of decedent's death against the estate of her husband.

While the opinion and decree of the orphans' court do not mention the $10,000 claim, the decree of that court ordering distribution of the entire estate of Joseph P. Beggs to his daughter, the remainderman, can reasonably be interpreted to be a holding that the decedent's claim was barred by the statute of limitations, as pleaded by the daughter in the proceeding before the orphans' court.

The Pennsylvania statute, 12 Purdons, section 831, provides for a six-year period of limitations, and even if the Orphans' Court of Allegheny County did not affirmatively hold that the debt was barred, as respondent contends, we would be compelled to hold so, unless some theory be advanced to toll the statute of limitations. The statute of limitations runs against the executor of an estate who is also a creditor. *In re Kuhlman's Estate—Appeal of Rehfuss*, 178 Pa. 43; 35 Atl. 918; motion for reargument refused, 180 Pa. 109; 36 Atl. 566. It was proper for the remainderman (the daughter) in the estate of Joseph P. Beggs to plead the statute of limitations against decedent as the executrix and creditor of the estate. *Hochs Appeal*, 21 Pa. 280. Be this as it may, respondent argues that the statute of limitations was tolled by reason of the payment of interest on the debt. The cases *Backrach* v. *Jewish Foster Home*, 185 Fed. 847, and *In re Clad's Estate*, 63 Atl. 542, support the proposition that payments of interest toll the statute of limitations. What respondent argues is that, since decedent received all the income from the securities belonging to the estate of Joseph P. Beggs, she received interest on the $10,000 throughout the years until her death. It is true that, throughout the period from the

time decedent qualified as executrix of her husband's estate in 1933 to the date of her death in 1945, she received the net income from the residue of her husband's estate. But this net income was received because she was entitled to it under the terms of her husband's will, and there is nothing to show or indicate that any part of such payments was paid to decedent as interest on the $10,000 debt here in question, or was so applied by her. The manner in which decedent Eleanor H. Beggs dealt with the estate of her deceased husband and received the income therefrom over the period of years is summed up in the opinion of the orphans' court, as follows:

Joseph P. Beggs died testate on the twenty-fifth day of June, 1933. Letters testamentary on his estate were granted to Mary Eleanor Hughes Beggs on July 6, 1933. She advertised her letters promptly, and filed an inventory on the third day of November, 1933. She did not remarry nor did she file any election to take against her husband's will. She died February 24, 1945 without having filed any account of the administration of the estate. She took into her custody all of the assets, and kept them invested as executrix, no part of which was ever transferred into her name, so that the possession of the estate never was parted with by her as executrix. She kept her books as executrix throughout the whole long period 1933 to 1944.

Some changes were made by her in investments from time to time, but always the new investment was substituted for the old. During the period of her administration, the estate enhanced in value. The only part of it she used for herself was the income.

From this statement of the facts, it is difficult to see how there could be any application of section 23 of the Fiduciaries Act. Undoubtedly, the widow, as executrix, had a right under the law to file her account and have distribution made to her as life tenant, and, thereafter be accountable for the value at which it was decreed to her. If she had done this, all that could be recovered by her daughter would be the value of the estate which was decreed to her as life tenant. Evidently, she had no intention of exercising any right given to her by the section of the Fiduciaries Act above-cited. She was content to receive the income, and have all the residue of the personal property pass to her daughter as the will directs.

Therefore, while it is clear that decedent throughout the years received the net income of her husband's estate, she received it as the income beneficiary under her husband's will, and we see no reason to hold that any of this income was received as interest on the $10,000 loan and tolled the statute of limitations.

Respondent argues that there was collusion and consent in the orphans' court by which the entire residuary estate of Joseph P. Beggs was distributed to his daughter without the payment of this $10,000 claim—this we can not find. All the evidence indicates to the contrary. We hold, therefore, that the debt of $10,000 owing to decedent at the death of Joseph P. Beggs, her husband, was at the time of decedent's death barred by the statute of limitations, and the evidence convinces us that it had no value. Therefore, nothing can be included in deced-

ent's gross estate by reason of the claim therefor under section 811 (a) of the code. Cf. *Estate of William Walker*, 4 T. C. 390. In the latter case we held that notes executed to decedent by two of his children, which were partly secured by collateral but subject to defenses of statute of limitations and coverture, had no value in excess of the value of the collateral. In the instant case the $10,000 claim was entirely unsecured and, therefore, there is no collateral to value. In the *Walker* case, we said:

> We think petitioner has furnished sufficient proof to make a *prima facie* case for the absence of any value in the notes in excess of the collateral. If there were other factors, the burden of going forward to prove them was thereby shifted to respondent. On this issue, we regard respondent's action as erroneous.

In the instant case we think the petitioner has made out a *prima facie* case that the claim of $10,000 had no value at the date of the death of decedent, and respondent has not come forward with any evidence to the contrary.

Respondent next contends that the $10,000 claim of decedent against the estate of her husband is includible in decedent's gross estate under section 811 (c) of the code, printed in the margin.[2] Apparently it is respondent's contention that it was within decedent's power at any time prior to her death to have collected the $10,000 claim against her husband's estate, of which she was the executrix, and that if she had done so the estate of her deceased husband which passed at her death to his daughter under the husband's will would have been diminished to the extent of $10,000. Therefore, he argues, this amounts in effect to a transfer by decedent to her daughter of $10,000 to take effect in possession or enjoyment at or after decedent's death, as those terms are used in section 811 (c). It is true, of course, that if decedent had collected the $10,000 claim against her husband's estate, the estate would have been diminished to that extent and the daughter, who was the remainderman under her father's will, would have received that much less in the distribution of her father's estate. But this, we think, would not be a transfer by decedent to her daugh-

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*

ter under 811 (c). It is clear that the entire $121,009.35 which Eleanor B. Scott, the daughter, received as a distribution by virtue of the decree of the orphans' court was received under the will of her father, Joseph P. Beggs, and none of it was received by reason of any transfer from her mother.

Decedent died owning the $10,000 claim and it passed along with her other property in trust for decedent's grandchildren. If it had had any value it would undoubtedly have been includible in her gross estate under section 811 (a). But it had no value, as we have already determined. In reality there was no transfer of any property of any sort by the decedent other than that made to her grandchildren by her will. It has been held that a refusal to accept a bequest with the result that the property passed to someone else is not a transfer to that someone else within the meaning of section 402 (c), Revenue Act of 1921. *Brown* v. *Routzahn*, 63 Fed. (2d) 914; certiorari denied, 290 U. S. 641.

Under the facts which we have in the instant case, we think we must hold that the decedent transferred neither the claim, nor the amount of $10,000, nor any interest in her husband's estate to her daughter, and there is no basis for including the $10,000 in decedent's gross estate under the provisions of section 811 (c).

*Decision will be entered under Rule 50.*