ESTATE OF MIRAN KARAGHEUSIAN, WALTER J. CORNO, LEILA KARAGHEUSIAN, AND MINOT A. CROFOOT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47159.   Filed January 31, 1955.

*Richard H. Appert, Esq.,* and *Robert W. Martin, Esq.,* for the petitioners.

*Maurice E. Stark, Esq.,* for the respondent.

---

## OPINION.

ARUNDELL, *Judge:* More than 20 years prior to decedent's death, his wife, Zabelle, applied for and received an insurance policy in the face amount of $100,000 on the life of decedent. Shortly after receiving the policy, she assigned it, along with certain securities, to a trust set up for the express purpose of holding the policy, its proceeds, and other property.

The trust agreement as subsequently amended provided for its amendment, alteration, or revocation by Zabelle during her lifetime but only with the consent of both the decedent and his daughter, Leila.

The primary question for decision herein is whether the entire proceeds of the policy paid to the trustee subsequent to decedent's death are includible in the gross estate of decedent within the meaning of section 811 (g) (2) (B) of the Internal Revenue Code of 1939.[1]

Respondent's basic position is that the provision in the trust instrument that decedent must consent to any amendment, alteration, or revocation of the trust vested in decedent an incident of ownership in the policy requiring the inclusion of the full proceeds in his gross estate. We think the respondent is in error on this point.

By the terms of the statute, the incident of ownership must be with respect to the life insurance policy. In the case before us, the policy

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \* \*

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent \* \* \* (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.

was assigned to the trustee. The second paragraph of the trust instrument provided as follows:

SECOND: Upon the actual assignment or making payable of the policies to the Trustee, the Trustee is thereupon invested with all right, title and interest in and to the policies, and is authorized to exercise and enjoy all options, rights and privileges therein and beneficial interests thereunder, as fully and effectually as the Donor might have done. The insurance companies are hereby authorized and directed to recognize the Trustee as fully entitled to all options, rights, privileges and interests under the policies and any receipts, releases and other instruments executed by the Trustee in connection with said policies shall be binding and conclusive upon the insurance companies and upon all persons and corporations interested in the trust.

Without regard to the nature of decedent's powers, then, they clearly extended only to the trust and not to the policy as required by the statute. In this respect, the case differs from *Estate of Myron Selznick*, 15 T. C. 716, affirmed per curiam 195 F. 2d 735, and *Godfrey v. Smyth*, 87 F. Supp. 982, affirmed per curiam 180 F. 2d 220. In both of those cases the decedent had specific powers over the policies themselves.[2] Moreover, the cases cited by respondent dealt with situations wherein the policy was originally owned by a decedent whose estate was taxed by reason of some string of ownership retained by him. See *Estate of Myron Selznick, supra, Godfrey v. Smyth, supra.*

Here, the policy was applied for by decedent's wife and issued to her. At no time was decedent an owner of the policy.

Respondent argues, alternatively, that if the proceeds of the policy are not includible in decedent's gross estate under the incidents of ownership test, they are includible in full under section 811 (g) (2) (A)[3] of the Internal Revenue Code of 1939 as the proceeds of insurance, the premiums of which were paid indirectly by the decedent. His first theory in support of that contention is that since the decedent's contributions to the trust, all of which were made between 1928 and 1931, exceeded the total premiums paid by the trustee during the life of the policy from 1928 to 1948, we should attribute all of the premiums to the assets contributed to the trust by decedent and the income attributable to those assets without regard to the assets contributed by Zabelle and the income therefrom. Respondent cites no authority for this position and we find it without merit.

[2] A more recent case, *Estate of Louis Goldstein* v. *United States,* 122 F. Supp. 677, decided by the Court of Claims July 13, 1954, and not called to our attention by either party, is distinguishable on the same ground, since the consent of the decedent therein was required for changes of beneficiary or other changes or amendments *of the policy* during his lifetime.

[3] (g) PROCEEDS OF LIFE INSURANCE.—

* * * * * *

(2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance * * *

The petitioners assert, on the other hand, that none of the premiums paid by the trustee are attributable to decedent. They stress the fact that the assets contributed to the trust by Zabelle produced sufficient income to meet all of the premiums except in 1928 when she made up a deficiency of $2,874.27 in the amount available for payment of the premium then due. Petitioners ask us to assume, therefore, that decedent's transfers to the trust were intended by decedent to increase the income to the life beneficiaries of the trust and not to increase the earnings available for insurance premiums. Such an assumption is clearly unwarranted. At the times of the transfers to the trust by decedent, he could not have foreseen nor predicted with any degree of certainty what the income of the trust would be for the balance of his life. Changing economic conditions might have reduced the trust income to a nominal amount leaving premiums unpaid and causing the lapse of the policy. Under such circumstances, the only reasonable inference is that the contributions to the trust by decedent were intended to further the general purposes of the trust, including the maintenance of the insurance policy.

Moreover, there is nothing to indicate that the trustee in administering the trust made any attempt to segregate the income according to the donor of the income-producing asset. The securities originally transferred to the trust were sold from time to time without regard to the donor and the proceeds were invested in other income-producing securities. The trustee's first duty as enumerated in the trust instrument was to pay the premiums on the policy from the income of the trust insofar as that was possible and this the trustee did without regard to the origin of the income.

We think, therefore, that it is reasonable to consider the premium for each year allocable between decedent and Zabelle in proportion to their respective contributions to the trust corpus as of that year.[4] In the ratio that the premium payments, so attributed to decedent, bear to the total premiums paid, the proceeds of the policy are includible in the gross estate of decedent under section 811 (g) (2) (A).

We think there is no merit in respondent's alternative theory that the entire proceeds of the insurance policy are includible in decedent's gross estate under the payment-of-premiums test even though a portion of the trust income used to pay the premiums is attributed to assets transferred to the trust by Zabelle. Respondent contends that since decedent transferred large amounts of cash and securities to Zabelle before and after the creation of the trust, those transfers to Zabelle were intended by decedent to be used for the purchase of the insurance on his life and that premiums paid from such transfers or the income therefrom would be indirectly paid by the decedent. Not

---

[4] The detailed data from which this computation may be made appears in the stipulation of facts submitted by the parties.

only does the record fail to disclose any support for a finding of such an intention on the part of the decedent, but the evidence indicates the absence of any such intent. We note that the transfers from decedent to his wife began several years before the creation of the trust and amounted to several times the amount placed in trust by Zabelle.

In his answer to the amended petition, respondent for the first time asserted that the life insurance proceeds are includible in full on the ground that they were derived from a transfer in contemplation of death. Section 811 (c) (1) (A) of the Internal Revenue Code of 1939 provides for the inclusion of property "To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—(A) in contemplation of his death * * *."

Respondent contends on brief that the burden of proof as to this issue is on petitioner. In support of that contention he suggests that the contemplation-of-death theory is merely an alternative contention and not a new matter affirmatively pleaded by respondent. The authorities are clearly opposed to this view and plainly state that the burden of proving contemplation of death in such circumstances is on the respondent. *Estate of Nathalie Koussevitsky*, 5 T. C. 650; *Constance McCormick*, 38 B. T. A. 308; *Security-First National Bank of Los Angeles, Executor*, 36 B. T. A. 633. Respondent has not met that burden of proof. The facts show that the insurance policy was applied for by Zabelle, issued to her, and transferred by her to the trustee. Decedent, never having owned the policy, could not and did not make any transfer of it in contemplation of death or otherwise. The cases of *Estate of Paul Garrett*, 8 T. C. 492, and *Estate of Charles I. Aaron*, 21 T. C. 377, cited by respondent, involve situations where the decedent owned insurance policies and transferred them in trust. Those cases, therefore, are not in point.

An additional issue is raised as to the valuation for estate tax purposes of the transfers of cash and securities to the trust by decedent. Petitioners do not contest their includibility under section 811(d) of the Internal Revenue Code of 1939 as transfers, the enjoyment of which was subject at the date of decedent's death to change through the exercise of a power by the decedent in conjunction with another person to alter, amend, or revoke.

Respondent has included them at a value of $107,925, based on his findings of the market value at the date of decedent's death of the specific securities originally transferred to the trust by decedent. Petitioners attack this method of valuation and we agree that it is unreasonable. None of the securities transferred by decedent remained in the trust at his death, nor was any effort ever made by the trustee to segregate those assets from the assets contributed by Zabelle. The

commingled assets representing the trust corpus were apparently sold and exchanged for other assets over the years as the exigencies of the economic situation required. The assets in the trust at the time of decedent's death were in effect substituted for the assets originally contributed by decedent and Zabelle.

We are not dealing here with transfers made in contemplation of death or transfers where there is a complete, definitive disposition of the property at the time of the transfer. The basis of the inclusion of the transfers in trust in the instant case rests on the fact that at the date of decedent's death there remained in him a power, in conjunction with another person, to alter, amend, or revoke the trust. This power which the decedent had was not a power over the property that he originally transferred but a power over the property that was in the trust at the time of his death. A similar question was before us in the case of the *Estate of Daniel Guggenheim*, 40 B. T. A. 181, wherein it was held that the value of the property in the trust at the time of decedent's death was the value which was to be included in determining the amount of his gross estate even though a part of the property transferred was then represented by substituted assets. The above-cited case was affirmed and modified in part in *Guggenheim* v. *Helvering*, 117 F. 2d 469, but not on this point.

The record before us discloses that decedent contributed 26.073 per cent of the total amount of cash and securities transferred to the trust corpus by decedent and Zabelle. We agree with petitioners, for the reasons stated above, that there should be included in decedent's gross estate 26.073 per cent of the cash and securities in the trust on the date of decedent's death.

Reviewed by the Court.

*Decision will be entered under Rule 50.*