ESTATE OF ANNA HART KINNEY, DECEASED, IRVING TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87718. Filed January 31, 1963.

*Winslow M. Lovejoy, Esq.,* and *Patrick M. Casey, Esq.,* for the petitioner.

*Philip Shurman, Esq.,* for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioner's estate tax of $194,993.07. The parties have settled several issues regarding the deficiency. The remaining issues for decision are: (1) Whether the value of certain stock dividends received by a trust of which petitioner's decedent was life beneficiary is includable in decedent's gross estate and, if so, (2) the method of determining the value of these stock dividends.

### FINDINGS OF FACT.

The case was submitted upon a complete stipulation of all the facts which we find accordingly. The exhibits attached to the stipulation are incorporated by reference. All other issues raised by the plead-

---

[4] See footnote 3, *supra.*

ings, other than those issues set out above, have been stipulated by the parties.

Anna Hart Kinney, hereinafter referred to as the decedent, died on January 30, 1956, a resident of the State of New York. Irving Trust Co. is the duly qualified and presently acting executor of the estate of Anna Hart Kinney, deceased, under letters testamentary issued on June 26, 1956, by the Surrogate's Court of New York County, State of New York.

The Federal estate tax return was filed with the district director of internal revenue for the Manhattan District, N.Y.

At the time of her death, the decedent was the sole surviving trustee and life beneficiary of a certain trust created by the last will and testament of E. Burton Hart, who died a resident of New York County, State of New York, on November 3, 1904, and whose last will and testament was duly admitted to probate by the Surrogate's Court, New York County, on December 1, 1904. The sum of $140,000 was bequeathed to three named trustees, of whom the decedent was one, and it was provided that the net income thereof should be paid to the decedent during her life and that upon her death the principal should be paid to her then heirs-at-law in accordance with the laws of the State of New York as at that time in force. The will of E. Burton Hart contained no provision regarding the disposition as between principal and income of stock dividends which might be received by the trust.

After the death of the decedent, petitioner filed in the Surrogate's Court, New York County, its final account of the proceedings of the decedent as sole surviving trustee of the trust and a supplemental account of petitioner as custodian of the funds of the trust after the death of the decedent and its petition for the judicial settlement of the accounts. Petitioner, on behalf of the decedent, as income beneficiary of the trust, made claim to certain stock dividends received by and held in the trust which it claimed that the decedent as life beneficiary was entitled to receive under the applicable New York law, as follows:

24 shares American Viscose Corp.
217 shares International Paper Co., Com.
20 shares Lily Tulip Cup Corp., Com.
120 shares Mission Corp., Com.
140/30/60 shares Mission Development Corp.
5 shares Pittsburgh Plate Glass Co., Com.
2 shares Shell Oil Co., Com.
200 shares Standard Oil Company (N.J.).

All the shares listed above were stock dividends allocable to income under New York law and received on shares held in the principal of the trust (or shares received with respect to such stock dividends by reason of stock dividends paid thereon or splits), except that of the 217 shares of International Paper Co. common, 54.48 shares had their

origin in 7 shares of International Paper Co. 5 percent preferred purchased from income of the trust for the sum of $486.83, and except that in some cases where the trust received fractional shares as part of such stock dividends, fractional shares were purchased from income to make a full share.

The shares listed above, received over the period from March 15, 1935, to January 27, 1956, had a value on the various dates received in the aggregate amount of $23,886.83 and a value on January 30, 1956, the date of decedent's death, in the aggregate amount of $65,325.04.

The shares listed above continued to be held in the trust from the date of their receipt until decedent's death. One-tenth of a share of International Paper Co. common received by the trust was sold on February 8, 1955, for $8.73 and 9 shares of Mission Corp. received by the trust were sold in April 1955 for $343.18.

The shares were issued in the name of the trustees. Decedent received the dividends which were paid on such shares as life beneficiary of the trust. She never executed any document assigning the shares to the trust.

In the accounting proceeding, the remaindermen of the trust objected to the claim of the estate to the stock dividends upon the ground that decedent had "waived and gifted" the stock dividends in question to the principal of the trust. The surrogate of New York County sustained the right of the principal of the trust to such stock dividends upon the ground that:

decedent consciously and deliberately waived and renounced any right that she had as income beneficiary in any of these stock distributions * * *

*       *       *       *       *       *       *

Whether we call it waiver, renunciation or gift, it is clear that [decedent] gave up and surrendered any rights * * * and that she intended to vest complete ownership of all of these dividends in the principal account.

The final decree of Surrogate's Court was entered on June 6, 1960.

The value of all of the assets of the trust as of January 30, 1956, the date of the decedent's death, was $489,652.55.

### OPINION.

Petitioner argues that the stock dividends in question are not includible in the decedent's estate since the shares were received and held by the trust and she never transferred such shares to the trust as required by section 2036 of the 1954 Code.[1] The Commissioner maintains that since the decedent was entitled to the stock dividends re-

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, * * *

ceived by the trust as a matter of law, she made a transfer to the trust when she permitted the stock dividends to become part of the trust corpus.

The will of E. Burton Hart, which created the trust in 1904, made no provision with regard to the disposition of stock dividends. Under the rule of apportionment laid down in *Matter of Osborne*, 209 N.Y. 450 (1913), the stock dividends here, which were attributable to income, belonged to the decedent as life beneficiary of the trust.[2] The court stated in a supplementary opinion (209 N.Y. at 484) :

The proposition decided by us in this case is that in all cases of extraordinary dividends, either of money or stock, sufficient of the dividend must be retained in the corpus of the trust to maintain that corpus unimpaired, and the remainder must be awarded to the life beneficiary * * *

The stock dividends attributable to income were not actually distributed to the decedent however, but remained in the trust of which she was one of the original trustees and the sole surviving trustee. The Surrogate's Court found this to be a conscious election by decedent to add to the corpus of the trust. This decision is determinative of the property rights involved under New York law, *Julien W. Vose*, 20 T.C. 597 (1953), although the tax effect is a matter of Federal law. *Morgan* v. *Commissioner*, 309 U.S. 78 (1940).

We are convinced that, in the words of the Surrogate's Court, "Whether we call it waiver, renunciation or gift," the decedent effected a transfer of the stock dividends within the meaning of section 2036, I.R.C. 1954. Under *Matter of Osborne, supra*, the stock dividends in question "must be awarded" to decedent. That she, as trustee, elected not to engage in the empty ritual of transferring legal title to her name in her individual capacity so that she might merely transfer legal title back to the trust does not change the essential nature of her intention. There can be no question that had she gone through these actual transactions, the stock dividends would be includable in decedent's estate.

We are not concerned here with what decedent intended, as in the usual case involving the existence of a transfer, for that question has already been settled in an adversary proceeding in the Surrogate's Court. The stock dividends which belonged to the decedent have come to be held in the trust corpus and this is the kind of situation which section 2036, I.R.C. 1954, was intended to cover.

We have held that an election to receive a reduced annuity in order to benefit a surviving annuitant amounted to a "transfer" within the meaning of the income tax statutes. *Adeline S. Davis*, 27 T.C. 378

[2] Section 17–a of the Personal Property Law of New York State now provides that, unless otherwise provided, all stock dividends shall constitute principal and not income as to trusts created after May 17, 1926.

(1956); Cf. *Estate of William J. Higgs*, 12 T.C. 280 (1949) reversed on other grounds 184 F. 2d 427 (C.A. 3, 1950); *Estate of Frederick John Twogood*, 15 T.C. 989 (1950), affd. 194 F. 2d 627 (C.A. 2, 1952). In somewhat the same fashion the decedent here elected to receive income from the stock dividends for her life with the principal to pass to her heirs at her death.

In a closely analogous case, *Sexton v. United States*, 300 F. 2d 490 (C.A. 7, 1962), the decedent was one of seven income beneficiaries of a trust which was to expire in 1940, at which time the corpus was to be divided among the beneficiaries in proportion to their interests. The beneficiaries and trustees agreed to extend the trust to a time which was beyond the decedent's death. After concluding that the decedent had relinquished a property right, the court held that, at page 493:

Once it is determined that decedent relinquished a property interest, there can be no doubt that the value of decedent's equitable share in the trust corpus is taxable at least under Section 2036(a)(1). Decedent affirmatively relinquished her right to receive her share in the corpus and thereby is considered to have made a transfer of her property interest in the corpus. The transfer was with a retained interest—an interest in the income of the trust for her life. This is sufficient to make the transfer includible in decedent's gross estate under Section 2036.

Petitioner cites *Brown v. Routzahn*, 63 F. 2d 914 (C.A. 6, 1933), in which decedent had renounced property given to him under the will of his wife who predeceased him. The property then passed with the residue of the wife's estate into a trust which paid the income to decedent for his life. The court held that at his death, decedent's estate did not include the value of the property willed to him by his wife, on the ground that the renunciation of the testamentary gift was not a transfer within the meaning of the statute taxing transfers in contemplation of death. Under the Ohio law of testate succession, title and interest in property does not vest until it is accepted.

In contrast, the court in *Hardenbergh v. Commissioner*, 198 F. 2d 63, 66 (C.A. 8, 1952), certiorari denied 344 U.S. 836 (1952), affirming 17 T.C. 166 (1951), held that a renunciation in favor of the son by the wife and daughter of a decedent who died intestate in Minnesota was a transfer and hence a gift to the son by the wife and daughter since "title to an interest in decedent's estate vested in the taxpayers [wife and daughter] by operation of law which neither had the power to prevent." The court noted that the consequence of a renunciation depends upon differences in the law of testate and intestate succession.

Here decedent had clearly accepted her interest in the trust established by her father. Under the holding in *Matter of Osborne*, *supra*, decedent "must be awarded" the stock dividends paid out of earnings.

There is no requirement that a life beneficiary must accept it first. It is clear that had these dividends been cash rather than stock dividends, decedent could not have avoided paying income tax on the grounds that she had not constructively received income because she had not withdrawn it from the trust. *Helvering* v. *Schaupp*, 71 F. 2d 736 (C.A. 8, 1934) ; *Smith* v. *United States*, 265 F. 2d 834 (C.A. 5, 1959).

Petitioner also cites *Estate of Eleanor Hughes Beggs*, 13 T.C. 131 (1949), in which decedent had been granted income for life from the residuary estate of her husband who predeceased her. Decedent held a $10,000 claim against her husband's estate which she did not collect and which, at her death, was barred by the statute of limitations. The court held that there had been no transfer from decedent, reasoning that the $10,000 had been in the estate of decedent's husband and passed to the remainderman under his will. It is to be noted that the $10,000 had been included in the valuation of decedent's husband's estate and no deduction had been taken for the claim. Here the stock dividends in question were not part of the settler's estate nor were they a part of the corpus of the trust until decedent "waived and renounced" her right to those dividends.

The Supreme Court's opinion in *Estate of Sanford* v. *Commissioner*, 308 U.S. 39, 42, 43 (1939), is equally applicable here : "When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title." Here it is clear that decedent deliberately passed control over the stock dividends in question to the trust for the benefit of the remaindermen, retaining only a life interest in the income. We find that this is a "transfer" within the meaning of section 2036, I.R.C. 1954.

The remaining question is the valuation of the stock dividends at decedent's death. The Commissioner contends that they are includable at the percentage of the fair market value of the trust corpus as of the date of decedent's death as represented by dividing the total amount of decedent's contributions by the total amount of the value of the trust assets at the dates of decedent's contributions.

In *Estate of Miran Karagheusian*, 23 T.C. 806 (1955), reversed on other grounds 233 F. 2d 197 (C.A. 2, 1956), we held that the proper measure of the value of securities transferred to a trust was the percentage of decedent's contribution applied to the market value of the trust at the time of decedent's death. However, we noted :

None of the securities transferred by decedent remained in the trust at his death, nor was any effort ever made by the trustee to segregate those assets from the assets contributed by [the wife]. The commingled assets representing the trust corpus were apparently sold and exchanged for other assets over the years as the exigencies of the economic situation required. * * * [23 T.C. 814, 815.]

Here the stock dividends continued to be held in the trust until decedent's death and their actual value as of that date is therefore readily ascertainable. Resort to the formula proposed by the Commissioner, which very likely would inaccurately reflect known value, is unnecessary.

The shares received as stock dividends which were sold prior to decedent's death have apparently not been placed in issue by the parties and we express no opinion as to them.

*Decision will be entered under Rule 50.*