ESTATE OF WILLARD F. ROCKWELL, DECEASED, WILLARD F. ROCKWELL JR., AND MELLON BANK, N.A., EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Rockwell v. Commissioner
Docket No. 12150-82.
United States Tax Court
T.C. Memo 1984-654; 1984 Tax Ct. Memo LEXIS 16; 49 T.C.M. (CCH) 331; T.C.M. (RIA) 84654; December 19, 1984. George R. Craig, for the petitioner. Frank A. Falvo, for the respondent. DAWSON MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency in Federal estate tax against the Estate of Willard F. Rockwell, deceased, in the amount of $93,877.78. After concessions by petitioner, the issues remaining for decision are (1) whether decedent retained sufficient incidents of ownership in eight insurance policies on his life to require the proceeds of these policies to be included in his gross estate under section 2042; [1] and (2) whether by virtue of an election under section 107(a)(2)(F) of the Technical Corrections Act of 1979, [2] petitioner is entitled under section 2035(b)(2) to exclude from decedent's gross estate any appreciation attributable to gifts excluded under section 2503(b). *18 This case was submitted fully stipulated pursuant to Rule 122. [3] The stipulation of facts and joint exhibits are incorporated herein by this reference. Willard F. Rockwell (decedent) died testate on October 16, 1978. At the time of his death he was a resident of Pittsburgh, Pennsylvania. His son, willard F. Rockwell, Jr., and Mellon Bank, National Association (Mellon Bank), were appointed coexecutors of his will. When the petition herein was filed, Willard F. Rockwell, Jr. resided in Pittsburgh, Pennsylvania, which was also Mellon Bank's principal place of business.A timely Federal estate tax return was filed for decedent's estate with the Internal Revenue Service Center in Pittsburgh, Pennsylvania. On December 20, 1928, decedent purchased eight life insurance policies on his life issued by the Northwestern Mutual Life Insurance Company. Decedent possessed the power to revoke or assign the policies. He later assigned all of his rights, title and interest in each of the policies to his wife, Clara T. Rockwell (Clara), on June 18, 1929, by using an assignment form provided by Northwestern *19 Mutual Life Insurance Company. The assignment read, in part, as follows: THE POWER TO EXERCISE ALL RIGHTS AND PRIVILEGES conferred upon the insured by the terms of said policies shall be vested solely in the said assignee, her executors, administrators or assigns, and not in the insured, except that without the written consent of the insured no one shall be designated as beneficiary or contingent beneficiary who has not an insurable interest in his life, nor shall the said policies be assigned to anyone (other than The Northwestern Mutual Life Insurance Company as security for a policy loan) who has not such insurable interest. [Emphasis added.] On August 6, 1929, Clara executed a form provided by the Northwestern Mutual Life Insurance Company titled "Designation of Corporate Trustee as Beneficiary (without reservation of the right to change the beneficiary)." At the same time, Clara assigned the eight insurance policies and some other assets owned by her in trust, to the Union Trust Company of Pittsburgh (Union Trust), now Mellon Bank, as trustee. Four of the five children of Willard F. and Clara Rockwell were initial beneficiaries of this trust. The trust *20 agreement was later amended to include the fifth child. The agreement was restated in its entirety on April 20, 1957, and an additional beneficiary was added on October 5, 1962. The restated trust agreement and amendment were in full force and effect at the time of decedent's death. Clara predeceased the decedent on October 31, 1965. Mellon Bank, as trustee, never changed the beneficiary of any of the policies on decedent's life, nor did it assign the policies, or borrow against them. In December 1977 decedent gave 95 shares of International common stock to each of 58 donees. The market value of the stock was $31.75 per share; hence, each gift amounted to $3,016.25. Decedent duly filed Federal gift tax returns for these amounts and paid the applicable tax. At decedent's death, the stock had appreciated in value to $37.125 per share. Petitioner duly filed its election under section 107(a)(2)(F) of the Technical Corrections Act of 1979, in regard to these gifts. At his death, decedent was a patient in a nursing home under twenty-four hour care. During the nine months preceding his death, decedent was incompetent, constantly and completely disoriented and unable *21 to read or communicate. During his life, decedent granted a general power of attorney to his son, Willard F. Rockwell, Jr. This power of attorney was in effect from January 28, 1947, up until decedent's death. Section 2042[4] determines the includability of life insurance proceeds in decedent's gross estate and provides that the proceeds of insurance on the life of the decedent, not receivable by or for the benefit of the estate, are includable in the decedent's gross estate if the decedent possessed any of the incidents of ownership in the policy at his death, exercisable either alone or in conjunction with any other person. *22 With regard to the term "incidents of ownership," section 20.2042-1(c)(2), Estate Tax Regs. provides as follows: Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy * * * We have held previously that an incident of ownership is the power to prevent a change in the beneficiary of a policy by withholding consent. Schwager v. Commissioner,64 T.C. 781, 791-792 (1975). See also Commissioner v. Karagheusian's Estate,233 F.2d 197 (2d Cir. 1956), revg. on this issue 23 T.C. 806 (1955). Petitioner does not dispute respondent's contention that the requirement in the eight life insurance policies that no beneficiaries be designated without *23 decedent's consent provided decedent with an incident of ownership, a so-called veto power. See Rev. Rule. 75-70, 1975-1 C.B. 301. Petitioner does disagree with respondent, however, on whether decedent continued to possess this veto power at death. Petitioner contends that the incidents of ownership held by decedent had been eliminated prior to the death of decedent's wife, Clara. Petitioner argues that when Clara executed a form designating Union Trust as beneficiary of the eight policies without reservation of the right to change the beneficiary, all of decedent's incidents of ownership were eliminated. Petitioner contends that decedent's veto power was contingent upon Clara's triggering that power by designating a new beneficiary or assigning the policy to someone without an insurable interest in his life. Accordingly, petitioner concludes that when Clara made an irrevocable designation of beneficiary thereby eliminating all of her rights under the policies, this also eliminated decedent's incidents of ownership. Respondent contends that Clara's designation of an irrevocable beneficiary had no effect on decedent's power to prevent the owner of the policies *24 from assigning the policies to anyone not having an insurable interest in his life. Respondent argues that although Clara did not reserve the right to change the beneficiary, the new beneficiary, Union Trust, could assign its interest to a third party. Respondent concludes that decedent could have vetoed such an assignment if the assignee did not have an insurable interest in decedent's life. Whether decedent retained an incident of ownership at death depends upon our interpretation of the assignment clause signed by decedent. Decedent, the original owner of the policies assigned all of his rights, title, and interest in the policies to his wife, Clara. Clara, as an assignee, could assign her interest as she wished, unless the policy provided otherwise. Knoche v. Mutual Life Ins. Co. of New York,317 Pa. 370, 176 A. 230 (1934). However, Clara could not assign away a greater interest than that which she possessed. Pennsylvania Higher Ed. Assistance Agency v. Devore,267 Pa. Super. 74, 406 A.2d 343 (1979); C.J. Simons & Co. v. American Mutual Liability Ins. Co.,107 N.J. Super. 209, 257 A.2d 743 (1969). Accordingly, *25 since the assignment clause provided that Clara received her interest from decedent subject to a retained veto power, any interest that Clara assigned remained subject to this power. Hence, the clause remained in effect until the decedent's death, providing him with an incident of ownership. In addition, Clara's designation of an irrevocable beneficiary did not strip the decedent of his veto power because the clause required decedent's consent over the designation of a beneficiary or contingent beneficiary and any assignment of the policies, to anyone who did not have an insurable interest in decedent's life. Therefore, while Clara's designation of an irrevocable beneficiary, in effect, removed decedent's power to veto the designation of a beneficiary, decedent's power to veto an assignment of the policies remained. Accordingly, if Clara had attempted to assign the policies to someone who did not have an insurable interest in decedent's life this would have to be approved by decedent. In addition, such an assignment by Clara's designated beneficiary, Union Trust, would also have to be approved by the decedent. Petitioner seeks next to attack the validity of the *26 decedent's retained veto power by arguing the following: (1) the veto clause was inserted by the insurance company and was not at the decedent's request; (2) no further assignments could be made by Union Trust because such an assignment would be a breach of its fiduciary duty; and (3) decedent was incompetent prior to his death and therefore could not have exercised the veto power prior to his death. We must also reject petitioner's attempts to invalidate decedent's veto power. While the veto clause was contained on a form provided by the insurance company, there is no indication in the record that the decedent lacked competence when he read and signed the form. Moreover, the decedent was a knowledgeable businessman who understood the legal consequences of his actions. We need not reach the issue of whether an assignment by Union Trust would be a breach of its fiduciary duty as trustee. The trustee's power to assign its interest is not helpful in resolving the question of whether decedent retained an incident of ownership at death. Decedent's incompetence prior to his death does not negate the fact that he held an incident of ownership in the policies at death. While, *27 as a practical matter, the decedent may not have wanted to, or been capable of exercising his veto power, this is not determinative. The crucial factor for our purposes is whether decedent possessed the power. Commissioner v. Estate of Noel,380 U.S. 678 (1965). In addition, the decedent's veto power could have been exercised by his son, Willard F. Rockwell, Jr., who held a general power of attorney for the decedent. Accordingly, having considered all of petitioner's contentions, and finding nothing in the policies to cause us to conclude otherwise, we hold that the proceeds of the eight insurance policies on decedent's life are includable in decedent's gross estate. The final issue in this case concerns the includability in decedent's gross estate of appreciation attributable to gifts made by decedent in 1977. Petitioner contends that the date of death value of the gifts should be reduced by the amount of appreciation on the annual exclusion of those gifts because of a duly filed election under section 107(a)(2)(F) of the Technical Corrections Act of 1979. Petitioner argues that section 2035(b)(2) does not indicate that the appreciation on gifts *28 is to be included in the gross estate and that any legislative history to the contrary should be disregarded. Respondent contends that petitioner is not entitled to deduct from decedent's gross estate any appreciation attributable to gifts made by the decedent in 1977 that were subject to the $3,000 annual exclusion. Respondent notes that the legislative history of section 2035(b)(2) clearly states that the gross estate is to include the excess of the death time value over the $3,000 annual exclusion provided under section 2503(b). We agree with respondent. Section 2035(b)(2) was amended by the Technical Corrections Act of 1979. Section 2035 as so amended provides, in part, as follows: (a) Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death. (b) *29 Subsection (a) shall not apply-- * * * (2) to any gift to a donee made during 1977 to the extent of the amount of such gift which was excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a). The legislative history of section 2035(b)(2) clearly provides that If an executor elects the application of * * * [Section 2035(b)(2)], there will be included in the decedent's gross estate the death time value less the amount excluded under section 2053(b) with respect to such gifts. [S. Rept. No. 96-498, 86 (1979), 1980-1 C.B. 517, 558; emphasis added.] We reject petitioner's contention that we disregard the legislative history. Such comments as these made by legislative officials when enacting new laws are crucial to a proper interpretation of congressional intent and purpose. Commissioner v. Bilder,369 U.S. 499 (1962). Accordingly, under section 2035(a) the gifts are includable in decedent's gross estate at their *30 death time value which includes any appreciation on the gifts that were subject to the annual exclusion, less the amount excluded under section 2053(b) with respect to those gifts. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death, October 16, 1978. ↩
2. Section 107(a)(2)(F) of the Technical Corrections Act of 1979, Pub. L. No. 96-222, 94 Stat. 223, amended section 2035(b)(2)↩.
3. All rule references are to the Tax Court Rules of Practice and Procedure.↩
4. SEC. 2042. PROCEEDS OF LIFE INSURANCE. The value of the gross estate shall include the value of all property-- (1) RECEIVABLE BY THE EXECUTOR.--To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent. (2) RECEIVABLE BY OTHER BENEFICIARIES.--To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.↩