Nicholas M. BLOCK, II, Executor,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 74–1178.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1975.

**604**

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Tax Div., Dept. of Justice, Washington, D. C., William J. Schloth, U. S. Atty., Ronald T. Knight, Asst. U. S. Atty., Macon, Ga., Dennis M. Donohue, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Benjamin M. Garland, J. Patrick Meyer, Jr., Macon, Ga., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Nicholas M. Block, as executor of the estate of Earle Henry Block, brought a claim for a refund of estate taxes assessed by the Commissioner of Internal Revenue and paid by the estate. A jury in the Middle District of Georgia returned a special verdict in favor of the estate, finding that a trust established by the decedent within three years of his death to benefit members of his family was not primarily motivated by his contemplation of death. Judgment in the amount of $91,752.04 was entered for the estate, and the United States appeals. We affirm.

I.

Approximately 28 months before his death, Earle H. Block established an irrevocable inter vivos trust with himself as trustee. The trust instrument provided that the trust income was to be paid to the settlor's sister-in-law Elizabeth Block for her life, and upon her death, to her two sons, Nicholas and Herbert, Jr., for their lives, with the remainder to their lineal descendants. The corpus of the trust consisted of income-producing securities valued at $400,153.14. The assets of this trust were not included in the decedent's gross estate on the estate tax return filed by the executor.

The Commissioner assessed a deficiency based on section 2035 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2035, which provides for the inclusion in a decedent's gross estate of property gratuitously transferred by him within three years of his death and "in contemplation of death."[1] The deficiency was assessed against only the actuarial value of the secondary life estates and remainder interest, or 65% of the trust's total

1. Section 2035 of the Internal Revenue Code of 1954 provides:

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

(b) Application of general rule.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.

value; the Commissioner did not contest the life motives of the decedent in establishing a life estate for Elizabeth. Rather, the Commissioner asserted that the decedent had separate and distinct motives for establishing the interests for his nephews and their descendants, that they were gifts "in contemplation of death," and that the death motives should govern the estate tax consequences of that actuarially determined portion of the trust.

Pursuant to its "split-gift" theory, the Government requested the trial court to rule that any evidence regarding the decedent's life motives for establishing Elizabeth's interest was irrelevant to the case and therefore inadmissible. The court declined to do so, but did allow the Government to introduce into evidence testimony and exhibits which related to the decedent's motives for establishing his nephews' life interests and the remainder. The Government also requested that the jury be instructed to disregard evidence related to the decedent's motivations for establishing Elizabeth's life estate. The trial court did not accept the Government's theory of the case and instructed the jury to look at the trust as a whole and to determine the dominant motive for establishing it. On appeal, the Government urges that the introduction of evidence regarding the motivation for Elizabeth's life estate and the instruction to determine the decedent's dominant motive for the entire trust, as opposed to the secondary life estates and remainder only, were prejudicial error.

## II.

 The determination of whether any particular transfer of property was made "in contemplation of death," within the meaning of section 2035, is rarely a clear-cut question, for it necessarily involves deciding the state of mind of a person who is not available to testify. In addition, there are often competing or ambiguous motives which must be balanced and weighed against each other. The task is perhaps most complicated in the case of gifts made in trust. They

frequently represent a comprehensive and complex plan benefitting multiple parties over a period of years. As Chief Justice Hughes noted in United States v. Wells, 283 U.S. 102, 119, 51 S.Ct. 446, 452, 75 L.Ed. 867 (1931), "There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute." That purpose, of course, is to tax in the estate gifts made during life which are intended to be substitutes for testamentary dispositions, thereby preventing evasion of the estate tax. United States v. Wells, 283 U.S. 102, 116–117, 51 S.Ct. 446 (1931); Bel v. United States, 452 F.2d 683, 687 (5th Cir. 1971), cert. denied, 406 U.S. 919, 92 S.Ct. 1770, 32 L.Ed.2d 118.

In all of the varying factual circumstances which have presented contemplation of death questions, only a few have dealt with the split-gift theory whereby a gift which was on the surface a single transfer may be considered as two gifts (or more) and the dominant motive determined for each separate gift thus broken down.

In Garrett's Estate v. Commissioner, 180 F.2d 955 (2d Cir. 1950), the court approved the splitting of a single trust for estate tax purposes where the corpus of the trust consisted of income-producing securities and thirty life insurance policies. The deed of trust directed the trustees to pay the premiums on the policies out of the income produced by the securities in the trust; the remainder of the income was paid out to the beneficiaries. Three-tenths of the income had been used to maintain the life insurance policies. The court affirmed a holding by the Tax Court that the life insurance policies and three-tenths of the securities had been transferred in contemplation of death. Under the provisions of the trust, it was sufficiently clear that the settlor intended for the life insurance policies to be kept intact, for enjoyment by the beneficiaries only after his death.

There was no evidence to contradict the overriding testamentary motive that this scheme bespoke. The court said:

At first blush it may indeed seem curious to hold that only a part of a single trust fund had been transferred in contemplation of death; usually, the question is whether, taking the gift as a whole, the testamentary motive predominates. However, it becomes plain on reflection that one motive may dispose the settlor to convey one kind of property, and another, another kind; and that it is quite irrelevant that he groups the two in one deed. One must distinguish between a conflict of motives, which might have to be resolved, in deciding whether Whiteacre, for instance, was conveyed in contemplation of death, and an unambiguous motive to convey Whiteacre coupled with an equally unambiguous, though contradictory, motive to convey Blackacre, though one deed conveyed both. 180 F.2d at 957.

■ The split-gift theory thus explained is a sound and logical approach to effectuating the intent of the contemplation of death statute. It is indeed clear that the decedent Garrett could have had motives for transferring the life insurance policies which contradicted his motives for placing income-producing securities in the same trust. These distinct motives are capable of isolation from each other, and the separate property to which each motive relates is easily identified.

■ On the other hand, in the case before us, the Government seeks to differentiate between the decedent's motives for benefitting each separate beneficiary. While there might be factual situations extraordinary enough to warrant such an approach, this case does not present the occasion. The record reveals numerous life-associated motives behind Earle Block's gift in trust to his deceased brother's family. At the time the trust was established, Earle Block was leading an active life, a heart condition having stabilized. He had been close to his brother and sister, both of whom predeceased him. After their deaths, he transferred his familial affection to his brother's widow Elizabeth and her two sons. He had promised his dying brother that he would set up a trust fund to insure that Elizabeth would be able to continue her accustomed life style. He had made prior gifts in trust to each of his nephews, as well as gifts of automobiles and stock. There was testimony that he did not trust his nephews' financial judgment. The total picture painted by this evidence is that of a settlor who desired to benefit close family members in a manner consistent with both their needs and his own sound tax and estate planning. The beneficiaries themselves were a single family unit. Indeed, Herbert, Jr.'s main support came from his mother after his father's death, thus the primary life estate also benefitted him. To be sure, estate planning was a factor in fleshing out the plans for the trust, and the decedent was counseled by an attorney who specialized in tax matters. But those facts alone, which constitute the entirety of the Government's evidence below, simply do not justify the Government's unrealistic attempt to fragment a coherent, unified trust plan into separately motivated pieces.

The only two courts which have considered the split-gift argument in a factual situation similar to the one before us have likewise concluded that it was "unrealistic" to fragment the motives behind separate interests in the same trust. Cleveland Trust Company v. United States, 421 F.2d 475 (6th Cir. 1970), cert. denied, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970); Studebaker v. United States, 211 F.Supp. 263 (N.D.Ind. 1962), modifying 195 F.Supp. 841. In both Studebaker and Cleveland Trust, the Government sought to separate a life interest in a trust from the remainder, conceding that the life beneficiary's interest had been given with predominantly life motives. Earle Block's provision for intervening life estates benefitting Elizabeth's sons does not alter the similarity of the basic facts.

The Government has suggested that our failure to apply a split-gift theory to

the facts now before us extends an open invitation to estate planners to dispose of large portions of wealth with inter vivos trusts established under the protective umbrella of a life associated motive for some small part of the trust. We simply point out that in such a case the asserted life motive would of course be balanced against other testamentary motives under the prevailing test to look at the dominant motive for the trust as a whole. If indeed it is a pretext, we have little doubt that it will not suffice to carry the estate's burden to disprove the statutory presumption that gifts made within three years of death are made in contemplation of death. Proving the negative, that the transfer was not in contemplation of death, "is seldom a light burden." Berman v. United States, 487 F.2d 70, 72 (5th Cir. 1973).

For the foregoing reasons, we find no error in the rulings and instructions of the trial court and the judgment of the district court is

Affirmed.