Alfred **GIARDINO**, Executor of the Estate of Ferdinand G. Chiarello, Plaintiff-Appellee,

v.

**COMMISSIONER OF INTERNAL REVENUE** and United States of America, Defendants-Appellants.

No. 158, Docket 85–6104.

United States Court of Appeals, Second Circuit.

Argued Oct. 17, 1985.

Decided Nov. 5, 1985.

Gerald T. Ford, Asst. U.S. Atty. for the S.D. of N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Marc H. Rosenbaum, Jane E. Booth, Asst. U.S. Attys., of counsel), for defendants-appellants.

W. Donald Nyland, New York City (Lambos, Flynn, Nyland & Giardino, New York City, Peter C. Lambos, of counsel), for plaintiff-appellee.

Before KAUFMAN, PRATT, and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Judge Learned Hand once wrote of the Income Tax Code, "the words ... dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception ..." We are called upon today to determine whether a cross reference in the Tax Code, typical of the Code's complexities, is sufficiently unambiguous to exempt a decedent's insurance proceeds from taxation. Relying on the literal meaning of the Code provisions to impose order on the "meaningless procession," we affirm.

## BACKGROUND

Ferdinand G. Chiarello died on October 31, 1978.[1] At the time of his death, he was a salaried employee of Pittson Stevedoring. For thirty-six years, Chiarello had participated in the Pittson Stevedoring Salaried Employees Pension Plan ("the Plan"), a qualified retirement plan pursuant to I.R.C. § 401(a).

Chiarello's interest in the Plan was funded by six insurance policies on his life. Had Chiarello lived until retirement, he would have received an annuity based on the cash value of those policies.

Because Chiarello died before retirement, however, the full face value of the policies, $196,606.67, was paid into an *inter vivos* trust which Chiarello had designated as beneficiary. The trust was established to continue weekly support payments to his estranged wife, in the event of his premature death.

On July 31, 1979, Alfred Giardino, as executor of the decedent's estate, filed a U.S. Estate Tax Return. He disclosed the proceeds from Chiarello's life insurance policies but claimed they were exempt from taxation pursuant to I.R.C. § 2039(c). The Internal Revenue Service disagreed and issued a Notice of Deficiency on July 2, 1982 for $71,933.66—including $64,632.58 in estate tax due on the insurance proceeds and $7,301.08 in unrelated and uncontested estate taxes.

The estate paid the deficiency plus $27,604.78 in interest, for a total of $99,538.44. On September 14, 1982, the appellee filed an administrative claim for refund in the amount of $89,468.94, representing the additional tax paid on the life insurance proceeds plus interest. One year later, Giardino brought this action in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1346(a)(1)[2], seeking a refund of $89,468.94 in estate taxes and interest paid.

Chief Judge Motley granted Giardino's motion for summary judgment, holding the insurance proceeds excludable from Chiarello's gross estate. The district court reasoned that a plain reading of the relevant statutes clearly supported Giardino's position and awarded the estate $117,771.24 in tax paid plus interest. Chief Judge Motley's well-reasoned opinion is of substantial aid in causing us to conclude that the judgment of the district court should be affirmed.

## DISCUSSION

As a general rule, life insurance proceeds are includable in a decedent's gross estate if "the decedent possessed at his death any of the incidents of ownership" over the policies. I.R.C. § 2042. Section 2039(c), however, provides an exception to the rule

---

1. Unless otherwise indicated, all references to the Internal Revenue Code are to those provisions as they existed at the time of Chiarello's death in 1978. The principal section of the Code at issue is section 2039(c), as it continued to be after its amendment by the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, and before its amendment by the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763. This version of section 2039(c) applies to the estate of any decedent dying after December 31, 1976 and before January 1, 1979.

2. The IRS never officially denied the estate's claim for a refund. Pursuant to I.R.C. § 6532(a)(1), a taxpayer may bring an action in federal district court if the Internal Revenue Service does not act upon a claim for a refund within six months.

by exempting the value of an annuity or other payment (including life insurance proceeds)[3] receivable by a beneficiary pursuant to a qualified plan as described in I.R.C. § 401.

We set forth the relevant portion of section 2039(c) to aid us in our quest for the answer to the complex question before us:

EXEMPTION OF ANNUITIES UNDER CERTAIN TRUSTS AND PLANS.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment (other than a lump sum distribution described in section 402(e)(4), determined without regard to the next to the last sentence of section 402(e)(4)(A)), receivable by any beneficiary (other than the executor) under [a qualified plan].

(emphasis added).

As the underscored language indicates, an exception to this exclusionary provision is made for "lump sum distributions described in section 402(e)(4)." Chiarello's insurance proceeds are thus exempt from taxation unless they fall within the lump sum exception to section 2039(c).

To our dismay, section 2039(c) does not define "lump sum distribution." Rather it incorporates by reference the description of the term as contained in section 402(e)(4). Section 402(e)(4), however, contains two

subsections that directly bear on this dispute and add to the riddle. Subsection (A) defines a "lump sum distribution" as a payment by a qualified plan to a beneficiary of all amounts due because of an employee's death, where payment occurs within one taxable year.[4] Subsection (B) explicitly prescribes, however, that "no amount which is not an annuity contract may be treated as a lump sum distribution under subparagraph (A) unless the taxpayer elects for the taxable year to have all such amounts received during such year so treated."[5] The bone of contention here is the applicability of these two subsections.

The government vehemently argues that the clear statutory language does not express the intent of the 94th Congress. Citing legislative history from the Revenue Act of 1978 (95th Congress)[6] and Treasury Regulation § 20.2039–3(b)[7], the government claims the reference to section 402(e)(4) should be read to encompass only the definition of a lump sum distribution set forth in subsection (A), without regard to the election requirement of subsection (B). According to this view, the $196,606.67 paid to Chiarello's estate would constitute a lump sum distribution and would be taxable in its entirety to the estate.

Giardino, on the other hand, reads section 2039(c) literally to refer to section 402(e)(4) and all its subdivisions. Thus, he

---

3. *See* Rev.Rul. 70–211, 1970–1 C.B. 190.

4. Section 402(e)(4)(A) states:
LUMP SUM DISTRIBUTION—For purposes of this section ... the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient ... on account of the employee's death....

5. Section 402(e)(4)(B) further provides:
ELECTION OF LUMP SUM TREATMENT— For purposes of this section ... *no amount which is not an annuity contract may be treated as a lump sum distribution under subparagraph (A) unless the taxpayer elects for the taxable year to have all such amounts received during such year so treated at the time* and in the manner provided under regulations prescribed by the Secretary.
(emphasis added).

6. According to the legislative history of the Revenue Act of 1978:
Under present law, a death benefit distribution from a tax-qualified plan ... which is eligible to be treated as a lump-sum distribution is not eligible for estate tax exclusion (sec. 2039(c)). This denial of the estate tax exclusion applies whether or not the recipient actually elects to treat the distribution as a lump-sum distribution to which favorable income tax treatment applies. (footnote omitted).
S.Rep. No. 1263, 95th Cong., 2d Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6761, 6844.

7. Treasury Regulation § 20.2039–3(b), issued in its final form in 1981, provides in relevant part that "[a] distribution is a lump sum distribution for purposes of this section without regard to the election described in section 402(e)(4)(B)."

contends, for the proceeds of a qualified plan to be includable in the decedent's gross estate as a lump sum, not only must the requirement of subsection (A) be met, but the beneficiary must also expressly elect lump sum treatment pursuant to subsection (B). It is undisputed that no such election was made in this case. Accordingly, Giardino maintains, the proceeds of Chiarello's pension fund are not includable in his gross estate.

It is not insignificant that both Chief Judge Motley and a panel of the Fourth Circuit, *Giardina v. United States*, No. 80–1822, (4th Cir. July 7, 1981), have found the language of section 2039(c) perfectly clear on its face. We agree with their conclusion. Although some of the government's arguments have surface plausibility, we are of the view that for the government to succeed, we must initially find the statutory language ambiguous. This we are unable to do. The plain language of section 2039(c) states that only lump sum distributions, as described in section 402(e)(4), received from qualified pension plans are to be included in a decedent's gross estate. Nothing in the statute supports the government's theory that only the requirement of section 402(e)(4)(A) need be met, without regard to the explicit language of subsection (B) requiring the taxpayer to elect lump sum treatment.[8] Indeed, to read the statute as the government urges would require a deliberate misinterpretation of the statute's express language or the equally improper insertion of a new modifying phrase.

Although the subsequent legislative history of the Revenue Act of 1978 directly contradicts our present interpretation, we need not look to the legislative history unless necessary to avoid an absurd result. *United States v. Perdue Farms, Inc.*, 680 F.2d 277, 284 (2d Cir.1982). We believe the result reached pursuant to the statute is not "absurd."[9] Similarly, Treasury Regulation § 20.2039–3(b), which supports the government's position, cannot be relied upon if it is "plainly inconsistent" with the relevant statutes. *Commissioner v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). In fact, the subsequent Treasury Regulation is diametrically opposed to the clear language of the statute and is therefore inapplicable.[10]

Despite the vigorous argument by the government, we are constrained from venturing beyond the undeniably clear meaning of section 2039(c) by taking it upon ourselves to change the language to read "section 402(e)(4)(A)" where Congress referred only to "section 402(e)(4)."

Accordingly, the judgment of the district court is affirmed.

---

8. Moreover, section 2039(c) further provides that a lump sum distribution is to be "determined without regard to the next to the last sentence of section 402(e)(4)(A)." Thus, Congress was aware of various subsections to section 402(e)(4) and specifically referred to them when it believed it was called for.

9. The government argues that the result in this case is absurd because, as proceeds of life insurance policies, the funds would neither be taxable to the beneficiary, I.R.C. § 101(a), nor to the estate. Hence, the government claims, the taxpayer in this case receives a windfall. It is plausible, however, that Congress would choose to tax both the decedent's estate and the benefi-

ciary only if the beneficiary elected favorable income tax treatment pursuant to section 402(e)(4)(B).

   Moreover, an equally unjust result might obtain when the funds are not life insurance proceeds. In such cases, the government would collect double taxes, while the unfortunate beneficiary who failed to make the election would not even enjoy the income tax benefits afforded by section 402(e)(4)(B).

10. Because we find section 2039(c) to be unambiguous on its face we need not reach the question of the Treasury Regulation's validity or the propriety of its retroactive application.