ESTATE OF FREDERICK ROSENBERG, DECEASED, PETER D. ROSENBERG, COEXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20654-84.        Filed May 19, 1986.

*Peter D. Rosenberg*, for the petitioner.
*Warren P. Simonsen*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined a $19,724 estate tax deficiency in respect of the Estate of Frederick Rosenberg, who died in 1980. After concessions, two issues remain in dispute: first, whether a $25,000 payment to decedent's son Peter pursuant to a retirement plan covering the decedent is includable in the decedent's gross estate under section 2039, I.R.C. 1954; and second, whether the first $3,000 of gifts by the decedent to Peter in each of the years 1978 and 1979 are includable in decedent's gross estate under section 2035. The case was submitted on the basis of a stipulation of facts and attached exhibits.

Petitioner is the Estate of Frederick Rosenberg. The decedent resided at his death in Long Island City, New York. His will was probated in the Surrogate's Court of Queen's County, New York. The coexecutors are his two sons, Peter and Edward. Peter acts also as the estate's attorney. At the time the petition herein was filed, Peter resided in Arlington, Virginia, and Edward resided in New York.

The decedent was born on December 16, 1903. He died testate on February 11, 1980, a widower, survived by his two sons and three grandsons (Edward's children), Jeffrey, Steven, and Douglas.

From 1939 until 1974, the decedent was employed by the city of New York as an assistant general clerk of the Queen's County Supreme Court for the State of New York. As an employee of the city of New York he participated in the New York City Employee's Retirement System (the NYCERS or the Retirement Plan) — a qualified trust described in section 401(a), I.R.C. 1954, and made exempt by section 501(a), I.R.C. 1954.

The New York City Retirement System is a plan which allows the employee to choose the form in which he will receive the benefits to which he is entitled. The employee can take his benefits in a self-designed combination of retirement income for himself and death benefits for his survivors. A decision by the employee to have benefits paid to survivors on his death would have the effect of reducing the employee's retirement allowance.

An employee's choices with respect to the form in which he can receive his benefits are described in a booklet entitled "The New York City Employees' Retirement System Options" (sometimes hereinafter referred to as Options), which is distributed to New York City employees by the NYCERS. The choices therein are labeled "No Option", Options 1, 2, 3, 4, 4-2, 4-3, and "The Split Option".

Upon his retirement from employment with the city of New York in 1974, decedent elected Option 4 of the Retirement Plan. Under Option 4, the decedent set aside a total of $50,000 in lump-sum benefits to be paid on his death directly to the following beneficiaries in the following amounts:

| Name | Amount |
|---|---|
| Peter D. Rosenberg (son) | $25,000 |
| Jeffrey S. Rosenberg (grandson) | 8,333 |
| Stephen M. Rosenberg (grandson) | 8,333 |
| Douglas J. Rosenberg (grandson) | 8,333 |

Only the $25,000 distributed to Peter Rosenberg is now in controversy.

For each unit of $1,000 set aside, decedent's retirement allowance was reduced by an actuarially determined amount. The "Options" booklet contains the following information with respect to Option 4:

Because this benefit is not based on age or sex of the beneficiary, you may change your beneficiary.

At the time of your death, your beneficiary may elect to receive the lump sum benefit or, alternatively, may elect to receive an annuity in lieu of the lump sum.

In 1981, the above sums were distributed to the above-named beneficiaries.

During 1977, 1978, and 1979, decedent transferred by gift a total of $39,070 to Peter. Total gifts for each year exceeded $3,000.

On the Federal estate tax return, each of the recipients of the lump-sum distributions elected to have his share excluded from the gross estate. The propriety of such exclusion, as will hereinafter more fully appear, would depend upon the distributee's reporting the amount received as income on his own income tax returns in a specified less favorable manner than would otherwise be allowed. In purporting to exercise such income tax option on their respective 1981 income tax returns, Peter did not utilize the 10-year averaging method but reported his $25,000 distribution as capital gain, and each of the three grandsons reported his respective $8,333 distribution as ordinary income on Form 5544, using the special 10-year averaging method.

In the notice of deficiency, the Commissioner increased the taxable estate by the $50,000 in distributions on the ground that "this sum is an asset includible in the gross estate under section 2039 of the Internal Revenue Code." Shortly after the Commissioner's notice, each of the three grandsons made an irrevocable election and amended his 1981 income tax return to treat his distribution as ordinary income without the special 10-year averaging. As a result of this change in income tax treatment by the grandsons, the Commissioner now accepts the exclusion of their survivor's benefits from decedent's gross estate. Still in controversy, however, is the $25,000 payment to Peter that was excluded from decedent's gross estate and which Peter reported in his own income tax return as capital gain.

Also on the estate tax return, on Schedule G-Transfers During Decedent's Life, there was reported $20,000 in inter vivos cash transfers made by decedent after December 31,

1976, and within 3 years of his death. Since such transfers actually totaled $39,070, the Commissioner increased the taxable estate by $16,070—the amount of the unreported transfers, $19,070, minus $3,000 that he found excludable in respect of the 1977 gifts under a special transitional rule changing the effect of section 2035(b)(2) for gifts made in 1977. The Commissioner did not allow similar $3,000 exclusions for the 1978 and 1979 gifts, as to which amendatory provisions of section 2035(b)(2) were deemed to be effective and which were regarded as requiring a different result. Petitioner now claims similar $3,000 exclusions for the years 1978 and 1979.

1. *The $25,000 payment to Peter.*—Petitioner challenges the includability of the $25,000 payment in the decedent's gross estate under section 2039 of the Code on both statutory and constitutional grounds. It is petitioner's position that section 2039(a), upon which the Government relies in the first instance for inclusion of the $25,000 payment in the gross estate, does not require that result by its very terms, and second, that the payment is exempt from such inclusion by reason of section 2039(c) which is not rendered inapplicable by the exception to such exemption provided in section 2039(f). We deal separately with each of the statutory arguments and consider finally the constitutional point.[1]

We note preliminarily that petitioner complains with indignation—an indignation that we fully share once we begin to examine section 2039(c) and (f)—about the complexity of the statutory provisions involved. However, we have no alternative but to struggle through these provisions, and we conclude that the Commissioner's position must be sustained. We also find that there is no constitutional impediment to the result.

a. *Section 2039(a).*—Section 2039(a) provides:

(a) GENERAL.—The gross estate shall include the value of an annuity *or other payment* receivable by any beneficiary by reason of surviving the

---

[1]While the constitutional issue was the only argument raised in the petition with respect to the dispute over inclusion of the lump-sum payment, we deal also with the two other arguments made by petitioner because the parties stipulate that they are in contention. We do not, however, consider petitioner's argument based on sec. 102, I.R.C. 1954, since it was not presented by the pleadings and was first raised on brief. See *Professional Services v. Commissioner*, 79 T.C. 888, 924 (1982); *Markwardt v. Commissioner*, 64 T.C. 989, 997 (1975).

decedent under any form of contract or agreement * * * if, under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment * * * [Emphasis supplied.]

Petitioner contends that the lump-sum payment in question does not meet the initial requirements for includability in gross estate that are set out in section 2039(a) because "it was neither payable to the decedent nor did the decedent even ever possess the right to receive such payment". In order to support that position, petitioner would have us view the $25,000 payment as "separate and distinct from the annual pension received by Frederick Rosenberg from the New York City Retirement System". Further, petitioner would have us read section 2039(a) to mean that a prerequisite to inclusion of the payment in decedent's gross estate is that the decedent have been paid or have had a right to receive the very same annuity or other payment that is ultimately distributed to the beneficiary.

Petitioner mischaracterizes the separate and distinct nature of the lump-sum benefit and misconstrues the requirements of section 2039(a). Its characterization of the lump-sum benefit as distinct from the decedent's pension ignores the fact that the decedent was entitled to receive the amount of the survivor's benefit as part of his pension, but, by electing Option 4, he voluntarily directed that it be paid to the survivor, with the result that there was a corresponding reduction in the amount of the pension receivable by him. To put it somewhat differently, the survivor's benefit was actuarially carved out of the decedent's pension, thereby reducing it. The intimation that if this characterization of the separateness of the payments to the decedent and the beneficiary were accepted, inclusion of the lump-sum payments in gross estate would be precluded, is contrary to the wording of the very provision that petitioner depends on for support. The wording of section 2039(a) requires only that the decedent and his beneficiary each receive an annuity or other payment under the same contract, agreement or "arrangement, understanding or plan, or any combination [thereof] arising by reason of the decedent's employment." Sec. 20.2039-1(b)(1), Estate Tax Regs. Here, both the annuity payments received by the

decedent from 1974 to the date of his death in 1980 and the "other payments" received by Peter Rosenberg in 1980 were received under the same employee retirement plan—the New York City Employee's Retirement System, under which the decedent had elected Option 4. This very situation, an annuity paid to the decedent for life and a lump sum paid to his beneficiary on his death, is used in the regulations as an example of the type of agreement or plan to which section 2039(a) applies. Sec. 20.2039-1(b)(2), example (1), Estate Tax Regs.

Finally, this Court and other courts have often found includable in a gross estate payments to a beneficiary that were of a type or amount different from the payments made to the decedent during his life, so long as both decedent and beneficiary received the payments under a group of retirement, insurance, and health plans provided by one employer. See *Gray v. United States*, 410 F.2d 1094 (3d Cir. 1969); *All v. McCobb*, 321 F.2d 633 (2d Cir. 1963); *Estate of Bahen v. United States*, 158 Ct. Cl. 141, 305 F.2d 827 (1962); *Estate of Beal v. Commissioner*, 47 T.C. 269 (1966); *Estate of Allen v. Commissioner*, 39 T.C. 817 (1963); *Looney v. United States*, 569 F. Supp. 1569 (M.D. Ga. 1983).

b. *Section 2039(c) and (f)*.—Section 2039(c) provides that "Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment * * * receivable by any beneficiary" under any one of four separately identified arrangements, each one of which calls for meticulous examination of other entirely separate and complex provisions of the statute.

Among the provisions thus brought into play are those in section 401(a), which in turn has more than 20 separately numbered paragraphs, some of which are further subdivided into subparagraphs (and sub subparagraphs), and some of which make applicable a considerable number of other provisions such as those in section 501(a), which further in turn makes applicable the highly detailed provisions of section 501(c) and (d), and back again to section 401(a), which still further in turn makes applicable still other statutory provisions, seemingly ad infinitum and ad nauseam. The matter is made further complicated by the

necessity of tracking down the various public laws that have from time to time added some of the paragraphs to section 401(a) or made amendments thereto and determining the effective dates of any such new paragraphs or amendments. Section 2039(c) also brings into play still other statutory provisions which in turn make still further cross-references to other provisions. It is virtually mind-boggling to thread one's way through this maze. Fortunately, we are spared this unenviable task, because there is no dispute between the parties that the $25,000 payment to Peter is covered by section 2039(c) and would be excluded from the gross estate (and thus not subject to the provisions of section 2039(a)), but for an explicit parenthetical provision in section 2039(c) creating an *exception* to the exemption in the case of "an amount described in subsection (f)". The task of fathoming the scope of subsection (f) is no simple matter in view of the cross-references therein, as will appear shortly, which in turn confusingly bring into play other statutory provisions such as those in section 402(a), which further in turn make applicable still other statutory provisions. However, upon working our way through all these provisions, we are satisfied that Peter's election to report his $25,000 as capital gain requires the conclusion that the $25,000 is "an amount described in subsection (f)", thereby requiring the further conclusion that it is an exception to the section 2039(c) exemption from section 2039(a).

Section 2039(f) was added to the Code on November 6, 1978, by section 142(b), Pub. L. 95-600, 92 Stat. 2796, effective for the estates of decedents dying after December 31, 1978. As applicable to the estate in this case,[2] it provides:

SEC. 2039(f). LUMP SUM DISTRIBUTIONS.—

(1) IN GENERAL.—An amount is described in this subsection if it is a lump sum distribution described in section 402(e)(4) (determined without regard to the next to the last sentence of section 402(e)(4)(A)).

---

[2] These provisions were thereafter amended at least two different times (Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 201, and Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2377), but each such amendment was made effective for periods which did not affect decedent's estate, and subsection (f) was then finally repealed by a third act of Congress, but the repeal was made effective only where the decedent died after Dec. 31, 1984. Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 873.

(2) EXCEPTION WHERE RECIPIENT ELECTS NOT TO TAKE 10-YEAR
AVERAGING.—A lump sum distribution described in paragraph (1) shall
be treated as not described in this subsection if the recipient elects
irrevocably (at such time and in such manner as the Secretary may by
regulations prescribe) to treat the distribution as taxable under section
402(a) without the application of paragraph (2) thereof.

Petitioner argues in effect that the $25,000 payment
should not be excluded from the section 2039(c) exemption
by reason of section 2039(f), since, as is contended, that
payment was not "an amount described in subsection (f)".
That position rests on the contention that the payment was
one that is to be treated as not "described in subsection (f)"
by reason of satisfying the requirements of (f)(2) to qualify
as an exception to (f)(1).[3] Paragraph (f)(2) is captioned
"Exception where recipient elects not to take 10-year
averaging", and the basis for the argument is that the
caption to (f)(2) limits the paragraph's scope. Accordingly,
the argument continues, when (f)(2) is read in light of its
caption, the payment must be characterized as one not
"described in subsection (f)" since Peter had not elected to
use 10-year averaging. As a consequence, the payment
would not be excluded from the section 2039(c) exemption
to section 2039(a) upon which the Government's position
ultimately rests.[4] We hold that a proper reading of (f)(2)
does not make applicable the exception to (f)(1) on the facts
of this case and that the $25,000 paid to Peter therefore
cannot be treated as an amount not "described in subsec-
tion (f)" so as to bring it within the section 2039(c)
exception to section 2039(a).

Apart from its convoluted character, (f)(2) suffers from

[3]No contention is made that, except for (f)(2), the payment does not otherwise fall within
(f)(1) that would be fatal to petitioner's position.

[4]An argument of this sort was accepted under the 1976 version of sec. 2039. In that version
of sec. 2039, lump-sum payments were required to be included in gross estate by means of a
parenthetical reference in sec. 2039(c) providing for an exception to the sec. 2039(c) exemption
from the sec. 2039(a) inclusion for "a lump sum distribution described in sec. 402(e)(4)."
Because this parenthetical provision referred to a lump-sum payment with reference to all of
sec. 402(e)(4), both (e)(4)(A) and (B) were relevant. In sec. 402(e)(4)(B) the definition of a
lump-sum payment was limited to a payment under (A) but only where the taxpayer had
elected "lump sum treatment." As a result, a lump-sum payment would not be defined as such
and therefore would not be included in gross estate unless the taxpayer had affirmatively
elected lump-sum treatment. *Giardino v. Commissioner*, 83 N.Y. Civ. 7205 (S.D.N.Y. 1984, 55
AFTR 2d 85-1541, 85-1 USTC par. 13,600), affd. 776 F.2d 406 (2d Cir. 1985); *Giardina v.
United States*, an unreported opinion (D. Md. 1980, 47 AFTR 2d 81-1580, 80-2 USTC par.
13,383), affd. without published opinion 661 F.2d 921 (4th Cir. 1981). In both cases the courts
suggest the solution would be different under the 1978 version of sec. 2039.

distressingly opaque draftsmanship by reason of the necessity of examining the provisions in section 402(a), and particularly paragraph (2) of section 402(a), which is singled out for special consideration by the cross-reference in (f)(2). Nevertheless, upon struggling through these provisions, we are left with no doubt that section 2039(f)(2) does go beyond its caption dealing with 10-year averaging and is equally applicable to situations where the beneficiary elects to report the amount received as capital gain, as was done by Peter. This is achieved by the provision in (f)(2) requiring the recipient "to treat the distribution as taxable under section 402(a) *without the application of paragraph (2) thereof*". (Emphasis supplied.) It is paragraph (2) of section 402(a) that authorizes capital gain treatment for the portion of a lump-sum distribution attributable to a decedent's pre-1974 participation in a retirement plan. Section 402(a)(1) provides generally for the taxability of the beneficiary, and, unless otherwise limited, would make applicable various provisions of the Code relating to the income tax, including section 72 and for the portions of the lump-sum distribution attributable to a decedent's post-1974 participation in a retirement plan the privilege of 10-year averaging under section 402(e). However, not only is 10-year averaging ruled out by (f)(2), but also ruled out is any privilege of taking advantage of the capital gains provisions otherwise authorized by section 402(a)(2). Thus, the language in (f)(2) that is emphasized above explicitly, by the cross-reference to paragraph (2) of section 402(a), forecloses the use of the capital gains provisions of the Code (otherwise authorized by section 402(a)(2)), if the (f)(2) exception to (f)(1) is to become operative and bring the payment within the 2039(c) exemption from estate tax under section 2039(a). In short, although the caption to section 2039(f)(2) refers only to 10-year averaging, the text definitely deals not only with situations where the beneficiary uses 10-year averaging but also with situations where he reports the amount received as capital gain. Since Peter did report the $25,000 payment as capital gain, the right to exclude that payment from the gross estate was forfeited. This conclusion is clear, although reached after a painstaking trip through the statutory provisions.

We reject petitioner's position that the caption to (f)(2) limits its scope to situations where the recipient uses 10-year averaging. The very body of (f)(2) itself definitely outlaws the use of the benefits of the capital gains provisions. See *Giardina v. United States*, an unreported opinion (D. Md. 1980, 47 AFTR 2d 81-1580, 80-2 USTC par. 13,383), affd. without published opinion 661 F.2d 921 (4th Cir. 1981). Our reading of paragraph (f)(2) comports with the contemporaneous understanding, in 1979, of the newly added paragraph as providing that "a lump sum distribution under a qualified plan is excludable from the estate of the deceased plan participant if the recipient elects to forego favorable income tax treatment (i.e., the recipient *must* elect to forego 10-year averaging *and capital gains treatment)*". Staff of Joint Comm. on Taxation, 95th Cong., lst Sess., General Explanation of the Revenue Act of 1978, at 92 (Comm. Print 1979). (Emphasis supplied.)

While the heading to section 2039(f)(2) refers only to 10-year averaging, such heading cannot limit the plain meaning of the statutory provisions themselves. *United States v. Minker*, 350 U.S. 179, 185 (1956); *Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co.*, 331 U.S. 519, 528-529 (1947); *Barbados #6 Ltd. v. Commissioner*, 85 T.C. 900, 906 n. 11 (1985). To reach a contrary result here one would have to ignore completely the reference in (f)(2) to paragraph (2) of section 402(a). This we cannot do.

In sum, since Peter elected to take advantage of the capital gains treatment for the $25,000 distribution as authorized by section 402(a)(2), the distribution fails to qualify as an amount not described in section 2039(f) by reason of paragraph (2) thereof, and in turn fails to qualify for the section 2039(c) exemption, with the ultimate consequence that the distribution must be included in the gross estate under section 2039(a). If this sounds like legal gibberish or gobbledegook, it is made necessary by the incredibly complex nature of the statute itself.[5]

---

[5]We have already indicated our agreement with petitioner's complaint about the complexity of the statute, and we sympathetically understand petitioner's calling our attention to the comment in Judge Wilkey's concurring opinion in *"Americans United" Inc. v. Walters*, 477 F.2d 1169, 1172 n. 1 (D.C. Cir. 1973), revd. on other grounds 416 U.S. 752 (1974):

"if 200 years ago men revolted on the principle that 'Taxation without representation is tyranny', then today men may rise in righteous wrath because taxation with representation but beyond human comprehension is worse."

c. *Constitutional issue.*—Petitioner makes much of the fact that decedent elected Option 4 at his retirement in 1974 before subsection (f), upon which the Government relies to make inapplicable the section 2039(c) exemption, was added in 1978 to section 2039. It is argued that since the various rights with respect to the decedent's participation in the retirement plan became fixed in 1974, the imposition of the tax by means of the withdrawal of the previously existing exemption by the subsequently enacted provisions of subsection (f) contravenes the Fifth Amendment, citing *Nichols v. Coolidge*, 274 U.S. 531 (1927).

In *Nichols v. Coolidge*, the decedent was regarded as having completely transferred property so that the survivors' rights in the property were finally and indefeasibly fixed before passage of the taxing act. Nothing was added to their rights as a result of the donor's death after enactment of the new statute. The decedent had retained no rights in or powers whatever over the property the exercise of which could have affected in any way the devolution of that property at death. No such rights or powers were terminated by death after the enactment of the wholly new estate tax statute; the rights of the transferees had become indefeasibly fixed prior to such enactment; and the subsequent retroactive imposition of the tax was regarded as so arbitrary as to contravene the Fifth Amendment. In the present case, petitioner has not called our attention to anything in the record which could support the allegation in the petition or bald assertion on brief that the $25,000 payment was received by Peter pursuant to an *irrevocable* election made by the decedent in 1974 at the time of his retirement, prior to the 1978 legislative addition of subsection (f) to section 2039. The inference which petitioner obviously wishes us to draw is that no rights or powers remained in the decedent in 1974, and that there was therefore nothing to be cut off or terminated at his death in 1980 in respect of that payment to Peter. We must reject that position.

In the first place, we do not find that the decedent was precluded under the retirement plan from revoking the gift to Peter and thereby either enhancing his own pension or providing that the $25,000 might be paid to someone else at his death. Bearing in mind that the burden of proof was

upon petitioner, it has failed to point to anything in the stipulated record before us to carry that burden in respect of the allegation in the petition that the election made by the decedent in 1974 was irrevocable. In the second place, and perhaps of even greater significance on this record, under the plan, the employee was affirmatively informed that "you may change your beneficiary". Certainly, the present case is critically different from *Nichols v. Coolidge*. We cannot find that the imposition of tax here would be so arbitrary and unreasonable as to constitute a violation of the Fifth Amendment. This circumstance alone serves definitely to dispose of the contention based on retroactivity upon which *Nichols v. Coolidge* rested. The cases are too numerous for comprehensive listing or useful discussion to establish that the retention of such or comparable rights by the decedent which did not expire until his death, renders completely inapplicable any argument based upon retroactivity upon which *Nichols v. Coolidge* in turn rested for invoking the Fifth Amendment. See, e.g., *Porter v. Commissioner*, 288 U.S. 436 (1933); *Reinecke v. Northern Trust Co.*, 278 U.S. 339 (1929); *Savage v. United States*, 331 F.2d 678 (2d Cir. 1964); *McIntosh's Estate v. Commissioner*, 248 F.2d 181 (2d Cir. 1957), affg. 25 T.C. 794 (1956); *Bailey v. Ratterre*, 243 F.2d 454 (2d Cir. 1957); *Rhode Island Hosp. Tr. Co. v. Commissioner*, 219 F.2d 923 (lst Cir. 1955); *Estate of Round v. Commissioner*, 40 T.C. 970 (1963). Cf. *Estate of Sanford v. Commissioner*, 308 U.S. 39 (1939); *Burnet v. Guggenheim*, 288 U.S. 280 (1933); *Goodman v. Commissioner*, 156 F.2d 218 (2d Cir. 1946); *Commissioner v. Allen*, 108 F.2d 961 (3d Cir. 1939); *Estate of Goelet v. Commissioner*, 51 T.C. 352 (1968). We cannot find, considering the posture of this case, that the imposition of tax here would be so arbitrary or unreasonable as to constitute a violation of the Fifth Amendment, and we need not pursue the matter further.[6] The plain fact is that *Nichols v. Coolidge* is distinguishable here.

[6]Nor need we consider to what extent Mr. Justice McReynolds' opinion in *Nichols v. Coolidge* has continuing vitality today in the light of subsequent extensive development of the law in this area. For example, although not explicitly disapproving *Nichols v. Coolidge*, and indeed even citing it, the unanimous opinion of Mr. Justice Stone in *Milliken v. United States*, 283 U.S. 15, 20-21, 24 (1931), nevertheless plainly followed an approach that was sharply at variance with ideas expressed in *Nichols v. Coolidge*. Also, another questionable aspect of *Nichols v. Coolidge* involves the absolute transfer by the decedent of her residential property to her five sons who at the same time entered into renewable leases with decedent and her

2. *Inclusion of $3,000 under section 2035.*—The taxpayer's major contention with respect to the gifts subject to section 2035 is that each year, the first $3,000 of the decedent's gifts to Peter Rosenberg are to be excluded from the gross estate. Petitioner also challenges the constitutionality of the provision.

a. *Exclusion for first $3,000 of gift.*—The gifts made by the decedent to Peter Rosenberg in 1977, 1978, and 1979 were all governed by section 2035 as amended by Pub. L. 95-600, 92 Stat. 2689, on November 6, 1978.[7] This Court

husband at nominal rental, it being conceded that the parties contemplated that the premises would be enjoyed by the decedent and her husband so long as they might desire to use them for residential purposes. 274 U.S. at 533. Mr. Justice McReynolds' opinion approved the views of the lower court that by reason of the absolute conveyance to the transferees, that property could not be included in the gross estate. 274 U.S. at 538-539. Yet there are cases today that require inclusion in the gross estate of property absolutely transferred by the decedent where there is merely an understanding (not theoretically legally enforceable) that the transferor might continue to occupy the premises until death. *Guynn v. United States*, 437 F.2d 1148 (4th Cir. 1971); *Estate of Rapelje v. Commissioner*, 73 T.C. 82 (1979); *Estate of Honigman v. Commissioner*, 66 T.C. 1080 (1976); *Estate of Hendry v. Commissioner*, 62 T.C. 861 (1974); *Estate of Kerdolff v. Commissioner*, 57 T.C. 643 (1972); *Estate of Linderme v. Commissioner*, 52 T.C. 305 (1969); *Estate of Garner v. Commissioner*, T.C. Memo. 1982-481, 44 T.C.M. 903, 51 P-H Memo T.C. par. 82,481; *Estate of Stubblefield v. Commissioner*, T.C. Memo 1981-353, 42 T.C.M. 343, 50 P-H Memo T.C. par. 81,353. And in connection with the position that even a reserved life estate was not sufficient to bring the property within the gross estate, see *Commissioner v. Estate of Church*, 335 U.S. 632, 646 et seq. (1949), overruling *May v. Heiner*, 281 U.S. 238 (1930), which reflected an approach like that in *Nichols v. Coolidge*.

Moreover, if *Nichols v. Coolidge* does have any continuing authority today, it would appear. to be limited to the particular situation in which the tax retroactively imposed is a wholly new type of tax (e.g., the first estate tax), rather than a change in base or rate of tax. *Westwick v. Commissioner*, 636 F.2d 291, 292 (10th Cir. 1980); *Buttke v. Commissioner*, 72 T.C. 677, 680 (1979), affd. 625 F.2d 202 (8th Cir. 1980), cert. denied 450 U.S. 982 (1981); *Rose v. Commissioner*, 55 T.C. 28, 30-31 (1970). Cf. *Fein v. United States*, 730 F.2d 1211, 1212-1214 (8th Cir. 1984); *Estate of Ceppi v. Commissioner*, 698 F.2d 17, 21-22 (1st Cir. 1983), affg. on a different basis 78 T.C. 320 (1982), cert. denied 462 U.S. 1120 (1983); *Sidney v. Commissioner*, 273 F.2d 928, 932 (2d Cir. 1960) (cases similarly so limiting *Untermyer v. Anderson*, 276 U.S. 440 (1928), a case invalidating retroactive application of a newly enacted gift tax where there was no gift tax whatever in existing law). Manifest in these cases is the notion, stemming from *Millikin v. United States*, 283 U.S. 15, 21 (1931), that a change in rate or base of tax is by its nature reasonably foreseeable and consequently not so harsh and oppressive as to be violative of the Fifth Amendment.

[7]SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

(b) EXCEPTIONS.—Subsection (a) shall not apply—

\*     \*     \*     \*     \*     \*     \*

(2) to any gift to a donee made during a calendar year if the decedent was not required by section 6019 to file any gift tax return for such year with respect to gifts to such donee. \* \* \*

SEC. 6019. GIFT TAX RETURNS.

(a) IN GENERAL.—Any individual who in any calendar quarter makes any transfers by gift

has previously found the scope of this 1978 version of section 2035 to be clear: "the value of all gifts made within 3 years of the transferor's death is includable in the transferor's gross estate, except for those gifts made to a single donee which do not aggregate more than $3,000 in any calendar year." *Estate of Ceppi v. Commissioner*, 78 T.C. 320, 321-322 (1982), affd. on this issue 698 F.2d 17 (1st Cir. 1983), cert. denied 462 U.S. 1120 (1983). By providing in (b)(2) that the exclusion turns on whether the decedent is required to file a gift tax return, the 1978 version of section 2035 allows no exclusion once the gifts to a donee exceed $3,000. Thus, the version of section 2035 relevant to gifts made after 1977 takes what might perhaps be characterized as a de minimis approach, or perhaps more likely, one based on administrative convenience in processing the returns— gifts to any person aggregating $3,000 or less in a single year (which do not require the filing of a gift tax return) are not included in the decedent's gross estate.[8]

This approach is clearly applicable to the gifts made in 1978 and 1979, the years for which petitioner seeks $3,000 exclusions. The Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2930, specifically made its revision effective for transfers of gifts on January 1, 1977, and later.[9]

Only for gifts made in 1977, itself, did Congress allow transitional use of what is sometimes called the "subtrac-

(other than transfers which under section 2503(b) are not to be included in the total amount of gifts for such quarter and other than qualified charitable transfers) shall make a return for such quarter with respect to the gift tax imposed by subtitle B.

SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In computing taxable gifts for the calendar quarter, in the case of gifts * * * made to any person by the donor during the calendar year 1971 and subsequent calendar years, $3,000 of such gifts to such person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not, for purposes of subsection (a), be included in the total amount of gifts made during such quarter. * * *

[8] Associated with both the de minimis and administrative convenience concepts is the notion that gifts aggregating a larger amount within a specified time prior to death are more likely to reflect substitutes for testamentary dispositions and that drawing the line at the amount requiring the filing of gift tax returns represents the reasonable fixing of an administratively convenient cutoff point to distinguish between small gifts and the ones more properly classifiable with transfers at death.

[9] The constitutionality of this retroactive effective date has been upheld. *Reed v. United States*, 743 F.2d 481, 485-486 (7th Cir. 1984); *Estate of Ceppi v. Commissioner*, 698 F.2d 17, 20-22 (1st Cir. 1983) affg. on a different basis 78 T.C. 320 (1982), cert. denied 462 U.S. 1120 (1983).

tion out" approach to section 2035—an approach under which $3,000 of the annual gifts to each donee could be excluded from the gross estate. Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 223.[10] By providing for a transitional rule for the year 1977, Congress left no doubt as to what was intended for the operative scope of the new provision in respect of later years. We do not accept petitioner's argument that the statute is ambiguous as applied to 1978 and 1979 and should therefore be construed in its favor.

b. *Constitutional argument.*—Petitioner contends that in any event, even if the statute be construed in the Government's favor, as we have concluded above, it must nevertheless be declared invalid as violative of due process under the Fifth Amendment.

We note at the outset of our consideration of this point that the theory "that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded". *Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963). The approach under which the Supreme Court now reviews congressional legislation is "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one". *Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (reviewing SSI program under equal protection component of Fifth Amendment). Legislative classifications will be upheld so long as they bear a "rational relation to a legitimate legislative goal", *Weinberger v. Salfi*, 422 U.S. 749, 772 (1975); "advances legitimate legislative goals in a rational fashion", *Schweiker v. Wilson*, 450 U.S. at 234; have "some 'reasonable basis' ", *Dandridge v. Williams*, 397 U.S. 471,

---

[10]Sec. 107(a)(2)(F) of Public Law 96-222, 94 Stat. 223, provides in part:

(F)(i) If the executor elects the benefits of this subparagraph with respect to any estate, section 2035(b) of the Internal Revenue Code of 1954 (relating to adjustments for gifts made within 3 years of decedent's death) shall be applied with respect to transfers made by the decedent during 1977 as if paragraph (2) of such section 2035(b) read as follows:

"(2) to any gift to a donee made during 1977 to the extent of the amounts of such gift which was excludable in computing taxable gifts by reason of section 2503(b) (relating to $3,000 annual exclusion for purposes of the gift tax) determined without regard to section 2513(a)".

(ii) The election under clause (i) with respect to any estate shall be made on or before the later of—

(I) the due date for filing the estate tax return, or

(II) the day which is 120 days after the date of the enactment of this Act.

485 (1970), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911); "have support in considerations of policy and practical convenience", *Steward Machine Co. v. Davis*, 301 U.S. 548, 584 (1937); do not achieve their purposes in a patently "arbitrary or irrational way", *U.S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 177 (1980); *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 83 (1978); and do not "manifest a patently arbitrary classification utterly lacking in rational justification", *Flemming v. Nestor*, 363 U.S. 603, 611 (1960).

Congress' decision in section 2035 to classify for the purpose of estate taxation gifts made within 3 years of death together with property actually passing at death in order to discourage the abuse of gift giving aimed at tax avoidance or gifts made as substitutes for testamentary dispositions is clearly valid within the standards outlined above. The administrative convenience of this classification is a legitimate consideration for the legislature. Congress may reasonably conclude that the "expense and other difficulties of individual determinations justif[y] the inherent imprecision of a prophylactic rule". *Weinberger v. Salfi*, 422 U.S. at 777.

The fact that some gifts made within 3 years of death will not be made in order to avoid estate tax, while some gifts made over 3 years before death will be made in order to avoid estate tax does not strip the legislative scheme of its validity. This kind of imperfection is inevitable whenever a line is drawn by the legislature. *Mathews v. Diaz*, 426 U.S. 67, 183 (1976). In *Vance v. Bradley*, 440 U.S. 93 (1979), the Supreme Court's following statement is particularly pertinent here (p. 108):

Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect it is nevertheless the rule that in a case like this "perfection is by no means required." *Phillips Chemical Co. v. Dumas School Dist.*, 361 U.S. 376, 385 (1960); accord, *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 51 (1973). The provision "does not offend the Constitution simply because the classification 'is not made with mathematical nicety * * *' " *Dandridge v. Williams*, 397 U.S. 471, 485 (1970), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). * * * [Fn. ref. omitted.]

A stricter rule requiring that "a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern * * * would ban all prophylactic provisions". *Weinberger v. Salfi*, 422 U.S. at 777. Here, Congress decided to draw a line, the line had to be drawn somewhere, and we will not venture to disturb that line. See *Estate of Cowser v. Commissioner*, 80 T.C. 783, 788 (1983), affd. 736 F.2d 1168 (7th Cir. 1984); *Guest v. Commissioner*, 72 T.C. 768, 778-779 (1979).

*Heiner v. Donnan*, 285 U.S. 312 (1932), upon which petitioner relies, is distinguishable. There, the statute under consideration called for the inclusion in the gross estate of gifts made in contemplation of death. Whether a gift is made in contemplation of death involves a factual matter to be decided upon examination of all the evidence. *Allen v. Trust Co. of Georgia*, 326 U.S. 630, 636 (1946); *United States v. Wells*, 283 U.S. 102, 119 (1931); *Block v. United States*, 507 F.2d 603, 605 (5th Cir. 1975); *Estate of Lidbury v. Commissioner*, 84 T.C. 146, 157 (1985); *Estate of Himmelstein v. Commissioner*, 73 T.C. 868, 871 (1980); *Estate of Lowe v. Commissioner*, 64 T.C. 663, 672 (1975), affd. 555 F.2d 244 (9th Cir. 1977); *Estate of Ford v. Commissioner*, 53 T.C. 114, 122 (1969), affd. per curiam 450 F.2d 878 (2d Cir. 1971); *Estate of Johnson v. Commissioner*, 10 T.C. 680, 688 (1948). The trial court in *Heiner v. Donnan* had found as a fact that the gifts in that case were not made "in contemplation of death". Yet what was involved in *Heiner v. Donnan* was a statutory provision establishing an irrebuttable presumption that all gifts in excess of a specified amount made within 2 years of death were to be treated as gifts made "in contemplation of death". The Supreme Court held that such an irrebuttable presumption was arbitrary in that it deprived the taxpayer of the opportunity of proving that a particular gift falling within the specified period of time was not in fact made "in contemplation of death". The Court stated in part (285 U.S. at 327-328, 329), "although the tax explicitly is based upon the circumstance that the thought of death must be the impelling cause of the transfer * * *, the presumption, nevertheless, precludes the ascertainment of the truth in respect of that requisite upon

which the liability is made to rest \* \* \* [The statute] constitutes an attempt, by legislative fiat, to enact into existence a fact which here does not, and cannot be made to, exist in actuality". It was in that context that the provision was declared to be violative of the Fifth Amendment.

Although, as a practical matter, there may not be much difference in the result between the statute involved in *Heiner v. Donnan* and that in the present case, its posture from a constitutional point of view is entirely different. Thus, *Heiner v. Donnan* was explicitly distinguished in *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377 (1973), on the ground that the statute involved in *Heiner v. Donnan* "conclusively presumed the existence of determinative facts". The Supreme Court in *Mourning* held that *Heiner v. Donnan* was inapplicable in a case involving "no comparable presumption" but rather a provision "intended as a prophylactic measure". Similarly here, we are dealing in this case with a matter of *classification* based upon "prophylactic" grounds, and the various decisions of the Supreme Court that we have noted above make it abundantly clear that the classification under review does not run afoul of the Fifth Amendment. Whether, and to what extent, *Heiner v. Donnan* is consistent with approaches that the Supreme Court has taken in later cases, such as those noted earlier herein, is a matter that we need not consider.[11] The plain fact is that it is distinguishable.

We find support, at least to some extent, for our conclusion that the provision under attack is constitutional in the numerous recent cases interpreting section 2035 without even mention of a constitutional problem of the kind raised here. *Estate of Rockwell v. Commissioner*, 779 F.2d 931 (3d Cir. 1985), affg. on this issue T.C. Memo. 1984-674, 49 T.C.M. 331, 53 P-H Memo T.C. par. 84,674; *Reed v. United States*, 743 F.2d 481 (7th Cir. 1984); *Fein v. United States*, 730 F.2d 1211 (8th Cir. 1984); *Estate of*

---

[11] We note, however, that the Second Circuit, to which this opinion would ordinarily be appealable (since the decedent died a resident of New York and his estate was administered in the courts of that State), has stated its agreement with a commentator that certain "early tax cases" (including specifically *Heiner v. Donnan*) are "plainly not good law today". *Sakol v. Commissioner*, 574 F.2d 694, 698 n. 10 (2d Cir. 1978). The Court then added its own conclusion that such cases "can no longer withstand analysis in the light of [citations to later Supreme Court cases omitted here]".

*Ceppi v. Commissioner,* 698 F.2d at 17; *First National Bank of Evanston v. United States,* 624 F. Supp. 763 (N.D. Ill. 1985); *Bacchus v. United States,* No. 82-3930 (D. N.J., July 3, 1985); *Estate of Kurihara v. Commissioner,* 82 T.C. 51 (1984); *Estate of English v. Commissioner,* T.C. Memo. 1985-549, 50 T.C.M. 1362, 54 P-H Memo T.C. par. 85,549.

*Decision will be entered for the respondent.*